245 N.J. Super. 354 (1991)
585 A.2d 956
BERNICE ARONSON, PLAINTIFF-RESPONDENT,
v.
SANFORD W. ARONSON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 28, 1990.
Decided January 16, 1991.
*356 Before Judges KING, LONG and R.S. COHEN.
Francis W. Donahue argued the cause for appellant (Skoloff & Wolfe, attorneys).
Lewis Cohn argued the cause for respondent (Fox and Fox, attorneys; Audrey S. Stern, on the brief).
The opinion of the court was delivered by LONG, J.A.D.
In this post-judgment matrimonial action, defendant, Sanford W. Aronson challenges the trial judge's denial of his motion for a modification of the alimony he pays to his former wife, plaintiff, Bernice Aronson (now Bernice Rubenfield). We affirm in part and reverse in part. In so doing, we hold that income generated by plaintiff's inheritance, which is an exempt asset, is eligible for consideration in determining whether the alimony paid by defendant should be modified.

I
The case arises out of plaintiff's 1988 motion to set alimony arrears and defendant's cross-motion to reduce or terminate alimony, suspend alimony payments pending final disposition of *357 the motion and to vacate arrears. Defendant's cross-motion was based upon the claim that his financial situation had deteriorated while that of plaintiff had improved since the time of the divorce in 1981. The motion judge fixed alimony arrears at $10,200, entered judgment in that amount in favor of plaintiff, and denied defendant's cross-motion pending discovery and a plenary hearing.
At the plenary hearing, the following facts were established: the parties were married from 1955 to 1981. During that period, defendant practiced dentistry from an office in the marital home in Short Hills. Plaintiff was trained as a dental assistant, but was not employed during the marriage. According to his tax returns, defendant's practice experienced a pattern of growth from 1976 to 1979:

 Year Gross Receipts Net Profit
 1976 $ 59,493.00 $21,332.00
 1977 $ 83,518.00 $41,008.00
 1978 $ 95,233.00 $45,947.00
 1979 $125,788.00 $72,407.00

On September 5, 1980, defendant suffered injuries in an automobile accident, and was unable to practice until January 1, 1981. Although the accident did not physically restrict defendant's ability to practice, he believed that he lost many of the new patients who attempted to contact him during that period.
In anticipation of the divorce, the parties made an agreement which was incorporated into the final judgment. By the agreement, they resolved all of the outstanding financial issues in the case. Among the provisions in the agreement were the following interrelated clauses:
(2) Defendant shall have the option to purchase plaintiff's interest in the marital home from her at any time before June 1, 1984 at the above stated value, that is, One Hundred Ten Thousand ($110,000) Dollars between now and June 1, 1982, One Hundred Twenty Thousand ($120,000) between June 1, 1982 and June 1, 1983 and One Hundred Thirty Thousand ($130,000) dollars between June 1, 1983 and June 1, 1984.
* * * * * * * *

*358 (3) From and after the vacation by plaintiff of the marital home, so long as plaintiff has not died, remarried or begun cohabitation on a permanent basis with an unrelated male, and until the sale of the marital home, defendant shall make payments to the plaintiff for her support and maintenance at the rate of $400 per week. From and after the sale of the house, so long as plaintiff has not died, remarried or begun cohabitation on a permanent basis with an unrelated male, and until plaintiff's remarriage, cohabitation on a permanent basis with an unrelated male or the death of either spouse, the defendant shall make payments to the plaintiff for her support and maintenance at the rate of $350 per week. Such payments shall be deductible by defendant for income tax purposes and taxable to plaintiff and shall terminate upon plaintiff's remarriage, cohabitation on a permanent basis with an unrelated male or upon the death of either plaintiff or defendant, whichever is earlier, except for any arrears that may be due and owing. There shall be no reduction in support to plaintiff should plaintiff become gainfully employed and defendant shall not apply for any reduction in support should such event occur.
Defendant purchased the marital home in September 1984 for $130,000. He refinanced the existing mortgage, with a $170,000 loan, in order to pay plaintiff for her interest. At the hearing, he valued the house, excluding anything related to his practice, at $450,000, but more if sold to a professional.
After his high-water mark income year of 1979, defendant's tax returns indicated that his business earnings declined below that level:

 Year Gross Receipts Net Profit
 1986 $ 96,192.00 $41,834.00
 1987 $ 98,120.00 $39,361.00
 1988 $104,793.00 $35,847.00

Defendant attributed the decline to the following factors: the house had to be refinanced in 1987, resulting in a $200,000 loan; he was in arrears on alimony, and had to obtain a second mortgage; and malpractice insurance annual premiums increased as did dental supply and laboratory costs. In addition, defendant explained that a dilution of the patient base caused his declining income. He testified that he treated mainly middleaged adults, many of whom moved to the Sun Belt. In addition, tooth decay has been virtually eradicated. New dentists find solo practice prohibitively expensive and open dental centers which charge lower prices. Many of the periodontists *359 upon whom he would rely for referrals are younger and refer their patients to younger colleagues. He and other dentists have "voids" in their appointment books. It would be possible, but not practical, to move his office because of the start-up expenses and loss of patients, and his age would not permit him to start over again.
Defendant testified that expenses directly related to the office are considered to be 100% office expenses. Combination expenses such as mortgage payments, real estate taxes, landscaping, natural gas, depreciation, and homeowner's insurance are calculated as 60% personal, 40% business. Water, electricity, and automobile are predominantly business expenses, and are apportioned 75% business, 25% personal. Cable television for "patient education and entertainment" and telephone charges are considered 100% business expenses, even though some use is personal. According to defendant, the IRS did not question these allocations in an audit "a few years ago." Defendant uses these apportionments, and has for about 20 years, even though his practice has been substantially reduced. Defendant works about four to four and one-half days per week, four hours per day.[1] Defendant inquired into entering a joint practice, but rejected the possibility because his standard of practice was "much higher" than that of the proposed operation, and he did not want to "prostitute" himself to pay alimony.
Plaintiff testified that after the divorce she worked for six or eight weeks, but quit when her mother became terminally ill. Her parents died two days apart in March 1983. Plaintiff was an only child, and her father was Chairman of Berkeley Federal *360 Savings & Loan Association. She received from her parents' estate approximately $381,000. She gave $20,000 to her daughter and son-in-law, $10,000 to her grandson, and made contributions of $6,000 to her son's IRA. The balance was placed in a trust account. She placed the $10,200 alimony arrearage payment in a savings certificate. Plaintiff has not had to borrow money and her lifestyle has remained similar to the lifestyle she had during the marriage. She took cruises in 1987 and 1988, and went to London in 1988. She contributes yearly to her IRA. In 1988, she received taxable interest of $7,523, tax exempt income of $24,683, and dividends of $770. From 1983 to 1988, in addition to her inheritance, she received her father's annuity in $26,216 annual payments. Plaintiff testified that her present assets are insufficient to maintain the lifestyle she had during the marriage because her money is tied up in investments, and her only income is $2,000 per month from the estate. Thus, according to plaintiff, she needs the alimony to supplement that figure.

II
The trial judge ruled that defendant's diminution in income did not constitute a substantial change in circumstances and thus denied his motion for modification. Underpinning this conclusion were several considerations including the fact that defendant's increased mortgage obligations, arising out of the buy-out of plaintiff's interest in the marital premises, had been factored into the alimony, which provided for a $50 per week reduction upon the buy-out, and thus did not constitute a change in circumstances. In addition, the judge questioned defendant's business expense breakdown in light of his reduced working life. (Defendant used the same apportionments for the past 20 years although his hours are 50% less than they were.) Most important to the judge, however, was her finding that defendant had an obligation, in the face of what he testified were external pressures on the viability of his practice, to attempt to earn more money. He did not do so. The judge *361 directly related the voluntariness of the reduction to this failure. Clearly, defendant made no meaningful effort to improve his status. On the contrary, what he did was to allow his practice to continue to diminish unchecked while bemoaning his fate. To the extent that a spouse's potential earning capacity is an important factor in setting alimony (see Mahoney v. Mahoney, 91 N.J. 488, 505, 453 A.2d 527 (1982); accord Stern v. Stern, 66 N.J. 340, 345, 331 A.2d 257 (1975); Monte v. Monte, 212 N.J. Super. 557, 570, 515 A.2d 1233 (App.Div. 1986)), it is equally relevant to modification. In this case, the thrust of the trial judge's findings was that defendant could have been earning more, and her legal premise was that defendant should have attempted to do so. She was entirely correct in both respects. See Harris v. Harris, 235 N.J. Super. 434, 439-40, 563 A.2d 64 (Ch.Div. 1989) and Arribi v. Arribi, 186 N.J. Super. 116, 118, 451 A.2d 969 (Ch.Div. 1982) (finding that the "pervading philosphy" in our precedent is that "one cannot find himself in, and choose to remain in, a position where he has diminished or no earning capacity and expect to be relieved of or to be able to ignore the obligations of support to one's family.") We thus affirm her determination that defendant failed to meet the burden of establishing that he had undergone changed circumstances within the meaning of Lepis v. Lepis, 83 N.J. 139, 146, 416 A.2d 45 (1980). See N.J.S.A. 2A:34-23.

III
It is here that we part company from the trial judge. In ruling that plaintiff's receipt of the income generated by her inheritance did not constitute changed circumstances, the judge mistakenly relied on Paragraph 3 of the settlement agreement which provides that "there shall be no reduction in support to plaintiff should plaintiff become gainfully employed and defendant shall not apply for any reduction in support should such event occur." Of this provision the judge stated:

*362 The parties contemplated that the plaintiff would have additional income besides alimony. It was contemplated that she would go to work and have earnings.
And the agreement specifically provides that this increased income to her would not be the cause of any request for, or any diminution of alimony payments due her from her husband, thus it was at all times from the outset understood by the parties that the wife's 
Increased income would not be a reason for any decreased alimony.
While the wife does not work  never having been employed, other than for a short time prior to marriage, it is clear from the agreement itself 
That any increase of income to her would not be considered a changed circumstance for purposes of modification of the agreement.
In short, the judge read Paragraph 3 as a bar to considering plaintiff's inheritance income a "changed circumstance." This is incorrect. On its face, the agreement eliminates a single type of income from consideration under Lepis  income from employment. This is a common matrimonial settlement provision. Here, it was obviously designed to encourage plaintiff, a middleaged woman with outdated work skills, to try her hand in the workplace by removing the disincentive of alimony reduction. The provision is silent as to all other income sources, including the plaintiff's future inheritance which was within the contemplation of both parties.
Matrimonial settlement agreements are achieved through much effort and thought on the part of the litigants and their attorneys. Such agreements are always preferable to judicial fiat from the litigants' perspective because they incorporate, to the fullest extent possible, the true wishes of the parties. From the point of view of the judicial system, they are also preferable because they resolve complicated legal issues without the necessity of a lengthy and acrimonious trial. When a judge interprets a matrimonial agreement in a way which does violence to the plain words of the document, the benefits of settling are lost to the litigants and, in the long run, the system suffers because doubt is cast upon the principle that if litigants resolve their differences amicably, their wishes will be honored. When that principle becomes dubious, the incentive for a litigant to settle without a trial is diminished.
*363 Here, the litigants clearly expressed their wishes that plaintiff's employment income not be viewed as a possible changed circumstance. On the contrary, they took no position on the income to be generated by plaintiff's future inheritance, either because its receipt within some reasonable period of time seemed unlikely or because they were unable to agree on the subject and intended it to be dealt with by a court at the time of its receipt. Whatever the circumstances, the trial judge's holding that defendant had bargained away his right to subject the inheritance income, when received, to a Lepis analysis is simply wrong. We thus reverse and remand the case to the trial judge for reconsideration of this issue.
In so doing, we note that there is nothing about plaintiff's inheritance income which entitles it to insulation from a Lepis motion. Although the inheritance itself is exempt from distribution under N.J.S.A. 2A:34-23, the income generated by it is no different from income generated by any other asset, exempt or otherwise, for an alimony analysis. It may thus be used for the purpose of determining changed circumstances to the extent that it constitutes an increase in plaintiff's "income and aggregate resources." Innes v. Innes, 117 N.J. 496, 513, 569 A.2d 770 (1990); Raymond v. Raymond, 39 N.J. Super. 24, 30, 120 A.2d 270 (Ch.Div. 1956). The fact that such income is generated by an exempt asset is of no moment. "While the income `or other usufruct' from immune assets may not be subject to equitable distribution, such income may be considered as a factor in alimony awards." 2 G. Skoloff & L. Cutler, New Jersey Family Law Practice § 6.6 at 798 (6th ed. 1990) (citing Painter v. Painter, 65 N.J. 196, 214, 320 A.2d 484 (1974)). Although exempt assets are inviolable in themselves (but see Weitzman v. Weitzman, 228 N.J. Super. 346, 549 A.2d 888 (App.Div. 1988), certif. denied, 114 N.J. 505, 555 A.2d 623 (1989)), the income thrown off by them, like the income generated by a distributed asset, is an entirely different matter. Lepis *364 v. Lepis, supra, 83 N.J. at 154, 416 A.2d 45; Esposito v. Esposito, 158 N.J. Super. 285, 300, 385 A.2d 1266 (App.Div. 1978); Lavene v. Lavene, 162 N.J. Super. 187, 203, 392 A.2d 621 (Ch.Div. 1978). It is clearly "eligible for inclusion in the calculus used to arrive at a modification of the alimony award."[2]Innes v. Innes, supra, 117 N.J. at 513, 569 A.2d 770 (citing Lepis v. Lepis, supra, 83 N.J. at 151, 416 A.2d 45; and Martindell v. Martindell, 21 N.J. 341, 355, 122 A.2d 352 (1956)).
Alimony is neither a punishment for the payor nor a reward for the payee. Nor should it be a windfall for any party. It is a right arising out of the marriage relationship to continue to live according to the economic standard established during the marriage as far as economic circumstances will allow. Innes v. Innes, supra, 117 N.J. at 503, 569 A.2d 770; Mahoney v. Mahoney, supra, 91 N.J. at 501-502, 453 A.2d 527. When support of an economically dependent spouse is at issue, the general considerations include the ability of that spouse to contribute to his or her needs. Lepis v. Lepis, supra, 83 N.J. at 152, 416 A.2d 45. To the extent that income is generated by a dependent spouse's inheritance or by any other asset, that income is crucial to the issue of that spouse's ability to contribute. This is true whether the spouse chooses to actually receive the income or whether, at his or her option, it is plowed back into the inheritance. The issue is not actual receipt of funds but access to them. So long as the spouse has the ability to tap the income source, as here for example, where interest is *365 paid on a cash fund, whether he or she actually obtains the cash in hand is inconsequential.[3]
On remand, the trial judge should make a thorough analysis of the parties' financial circumstances in light of plaintiff's receipt of inheritance income in an amount which exceeds defendant's annual alimony payment and should determine the extent to which, if at all, this obvious change in plaintiff's circumstances warrants a modification of defendant's obligation.
Affirmed in part; reversed and remanded in part.
NOTES
[1] The trial judge found that defendant testified that this was 15% of his 1981 working time. That would mean defendant was working 120 hours per week in 1981. Defendant moved to correct the record on this point to reflect that the 18 hours per week is 50% of what he was working in 1981. The motion was denied. It seems likely to us that 50% is correct and that the 15% was a stenographic error.
[2] Not included in this eligibility category are the payments plaintiff received from her father's annuity which constitute the inherited asset itself conveyed periodically as opposed to the income generated by the inherited cash fund. Periodicity does not change the nature of the transaction. Innes v. Innes, supra, 117 N.J. at 513, 569 A.2d 770. The annuity is not includable in plaintiff's income base because it is not income but a return of principal. Id.
[3] We are not called upon here to address the more complicated issue of how to deal with a payee spouse who chooses an investment scheme which denies access to current income.