698 A.2d 549

HAROLD D. STIFFLER, PLAINTIFF, v. MARY ELLEN STIFFLER, DEFENDANT.

Superior Court of New Jersey
Chancery Division
Family Part
Middlesex County

Decided May 15, 1997.

*Sidney Sawyer* for plaintiff (*Sawyer, Gale & Laughlin,* attorneys).

*Barbara Ulrichsen* for defendant (*Ulrichsen, Amarel & Eory,* attorneys).

FISHER, J.S.C.

In this case was raised an interesting issue concerning the extent to which the existence of an asset, exempt from equitable distribution, may be considered in the creation of an alimony award. *Aronson v. Aronson,* 245 *N.J.Super.* 354, 585 *A.*2d 956 (App.Div.1991) held that the interest income generated by an inheritance could be considered in modifying an earlier alimony award. *Aronson* determined this was true even if the spouse possessed of the inheritance reinvested the interest income rather than disposing of it.

Plaintiff Harold Stiffler (the payor spouse) used a substantial inheritance to buy a new home and thus invested this inheritance in a manner which does not produce any interest income as occurred in *Aronson.* The issue debated by these parties is whether the court should impute income to plaintiff for the interest that could have been earned on this inheritance—if it had been invested in other ways—for the purpose of setting an appropriate award of alimony.

In an oral opinion rendered on March 7, 1997, the court resolved this and a number of issues raised during the course of a trial which took place on January 13, 28 and 30, 1997. This opinion supplements that earlier decision with respect only to the question of whether there should be an expansion of *Aronson*'s holding.

The purpose of alimony is to provide the dependent spouse with "a level of support and standard of living generally commensurate with the quality of economic life that existed during the marriage." *Koelble v. Koelble,* 261 *N.J.Super.* 190, 192–193, 618 *A.*2d 377 (App.Div.1992). *N.J.S.A.* 2A:34–23 provides numer-

ous factors which should be applied, but the central factors consist of the duration of the marriage and the need for the one spouse to receive and the ability of the other spouse to pay alimony. *Aronson* considered the impact of the ex-wife's receipt of an inheritance after the entry of the divorce judgment upon an application to modify the alimony she was receiving. While acknowledging that an inheritance is exempt from equitable distribution, the court held that the income generated by a such an asset "is an entirely different matter". 245 *N.J.Super.* at 363, 585 *A.*2d 956. In speaking for the court, Judge Long said:

When support of an economically dependent spouse is at issue, the general considerations include the ability of that spouse to contribute to his or her needs. To the extent that income is generated by a dependent spouse's inheritance or by any other asset, that income is crucial to the issue of that spouse's ability to contribute. This is true whether the spouse chooses to actually receive the income or whether, at his or her option, it is plowed back into the inheritance. The issue is not actual receipt of funds but access to them. So long as the spouse has the ability to tap the income source, as here for example, where interest is paid on a cash fund, whether he or she actually obtains the cash in hand is inconsequential.

[245 *N.J.Super.* at 364–365, 585 *A.*2d 956 (citations omitted)].

Both parties to this case received an inheritance from plaintiff's aunt during the pendency of this action. To be precise, defendant Mary Ellen Stiffler received approximately $100,000 through the aunt's will; plaintiff received approximately $394,000 in *inter vivos* gifts from his aunt.[1] While the testimony revealed that plaintiff had been the primary or, perhaps, sole beneficiary prior to the end of 1995, events which occurred just weeks before his aunt's death led to a change in her will and the exclusion of plaintiff as a beneficiary. He was replaced by others, including defendant.[2]

---

[1] For convenience's sake, the *inter vivos* gifts received by plaintiff will be referred to as his "inheritance".

[2] Apparently, in a conversation with the aunt a few weeks prior to her death, defendant told her that plaintiff had been unfaithful to her. Very soon after that conversation the aunt changed her will in the manner just mentioned and then, very soon after that, died. While there was testimony, and some suggestion, that defendant's actions in this regard were wrongful, plaintiff sought no affirmative relief as a result.

■ In any event, because of the aunt's death, both parties received certain liquid assets. Neither party claims an interest in the other's inheritance but the argument has been made that the existence of these assets impacts on the claim for alimony. As noted, *Aronson* recognized that income generated from an exempt asset may be considered in assessing or adjusting alimony. But the *Aronson* court also said that "[s]o long as the spouse has the ability to tap the income source ... whether he or she actually obtains the cash in hand, is inconsequential." 245 *N.J.Super.* at 364–365, 585 *A*.2d 956. In *Aronson* the supported spouse possessed an inherited fund which was earning interest. The interest, rather than being received as income, was being plowed back into the inheritance. *Id.* at 364, 585 *A*.2d 956. Here, plaintiff has invested his inheritance in a new home which, of course, does not spin off any interest income. He argues his inheritance is irrelevant because a non-income producing asset does not increase his ability to pay alimony.

It is true that the circumstances of this case do not neatly track those described in *Aronson*. Judge Long said in *Aronson* that income generated by an inheritance is to be considered in the calculus used to arrive at the alimony award "[s]o long as the spouse has the ability to tap the income source." That is not presented here, although it could be said that the source is "tappable" so long as plaintiff owns his new home, *i.e.*, he can sell or mortgage it to generate income. But is that what *Aronson* intended?

Like *Aronson*, cases from other jurisdictions recognize that a matrimonial court may consider an inheritance actually received by one of the spouses in calculating alimony, *see, e.g., Petition of Sturtz*, 415 *N.W.*2d 173, 174 (Iowa App.1987); *Bartlett v. Bartlett*, 220 *Conn.* 372, 599 *A*.2d 14, 19 (1991); some jurisdictions also have found that a future legacy may be considered as a circumstance impacting upon an alimony obligation, *see, e.g., Lawlor v. Lawlor*, 123 *N.H.* 163, 459 *A*.2d 238, 240 (1983); *Schreiber v. Schreiber*, 224

*So.*2d 407, 409–410 (Fla.Dist.Ct.App.1969). As the Utah Supreme Court said in *Wilkins v. Stout,* 588 *P.*2d 145, 146 (1978):

Under its equity powers to see that the welfare of the parties ... is best served, the court can take into consideration all of the pertinent circumstances. For example, in an appropriate situation, if it should appear with reasonable certainty that one party was about to receive a munificent inheritance ..., the court could undoubtedly take that into account, even though it was to be acquired after the decree was entered.

While New Jersey does not appear to recognize the consideration of a *potential* inheritance in awarding alimony,[3] certainly *Aronson's* inclusion of an *actual* inheritance into the alimony calculus broke no particular new ground.

For the most part, these authorities appear to presuppose that the spouse with the inheritance is able to derive income from the inherited asset. This particular case differs from *Aronson* because plaintiff has invested his inheritance in a non-income producing asset. The question to be determined is whether the consideration of this non-income producing asset is consistent with *Aronson's* philosophy.

This case merely provides circumstances which suggest the propriety of an extension of *Aronson.* Support orders are primarily based not so much on the actual income of the parties but on their potential to generate income. *Mahoney v. Mahoney,* 91 *N.J.* 488, 505, 453 *A.*2d 527 (1982). When a spouse is not earning to his or her true potential and capacity then an imputation of income based upon that potential is appropriate. *See, e.g., Arribi v. Arribi,* 186 *N.J.Super.* 116, 118, 451 *A.*2d 969 (Ch.Div.

---

3 It is doubtful that New Jersey would, nor is it appropriate that it should, recognize that a contingent inheritance is to be considered. That a person is named as a beneficiary in a will is hardly something which can be "taken to the bank" until the testator dies. Wills can be, and often are (as plaintiff well knows from his own experience) torn up and redrafted. One's position as a beneficiary of a will executed by a person still living is, in this court's view, as important in making an award of alimony as is owning a ticket in next week's lottery. While this court believes that New Jersey would not follow the other jurisdictions cited above which hold otherwise, it is not necessary to decide that issue for purposes of this case.

1982). In the same way an inheritance, which generates no income solely because its owner has altered its capacity to earn interest, should not be automatically exempt from the alimony calculus. It is its potential to generate income which is germane.

If plaintiff had invested the inheritance so as to generate interest, that additional income would be considered in the computation of alimony. The *quantum* of alimony should not be diminished because his investment generates no interest. The alimony statute does not prohibit a spouse from doing what he will with his inheritance. Indeed, the spouse can go and lose it all at the racetrack. But it seems beyond question, in light of *Aronson*, that a matrimonial court may look to an inheritance, and its *potential* to earn income, in its calculation of an award of alimony. If this were not so, future litigants would have a perfect blueprint for evading *Aronson*. The Supreme Court of Connecticut reached the same conclusion in examining a vested inheritance which, due to a variety of complications, was not anticipated to be in the payor spouse's hands for a few years. *Bartlett, supra*, 599 A.2d at 16. The payor spouse argued that even if his inheritance had vested, "the trial court was limited to evidence of liquid assets and income-producing real property" for alimony purposes. 599 A.2d at 19. The court in *Bartlett, supra*, 599 A.2d at 19, responded by holding that

> logic and sound public policy dictate a rule that requires the consideration of all assets, because a contrary rule would encourage parties who acquire substantial amounts of nonliquid assets after the original judgment to insulate themselves from paying more alimony, despite their increased wealth, by simply delaying the liquidation of those assets. We therefore reject the argument that only liquid assets are relevant to alimony modification.

For the same reasons, this court holds that plaintiff cannot insulate his inheritance from the alimony calculus by transforming it into a non-income producing asset.

■ That does not mean that the inheritance should be viewed as if it all had been invested in some manner which would generate income. Whether it is equitable to impute that all of the inheritance should have been invested in a way to generate

interest income, some of it or none of it depends upon the circumstances. For example, if a spouse mired in debt utilized all of an inheritance to retire some or all of that debt it would seem inappropriate for the court to impute an income to that spouse based upon what the inheritance would have earned if invested in a manner calculated to generate interest. By retiring debt that spouse would improve his or her cash flow to the benefit of the other party and indirectly have a positive impact on the spouse's ability to pay alimony.

As a result of this action, the marital home was sold and both parties were left with a need to obtain new shelter. Certainly it is equitable to conclude that plaintiff's use of his inheritance to obtain a home consistent with the marital lifestyle was a legitimate use of the inheritance and a use which would permit an exemption of that item from the alimony calculus. But when plaintiff used those funds to purchase a $495,000 home when the home he recently left sold for $230,000, it is more than fair for the court to conclude that the funds utilized to increase his lifestyle should be imputed to have been invested so as to generate income. Accordingly, the court will impute interest income to plaintiff in the amount of $12,000 per year (a principal of $200,000 invested at the rate of 6%) and to defendant in the amount of $6,000 per year (a principal of $100,000 invested at the rate of 6%).

A judgment of divorce has been entered based on the foregoing and the other findings of fact and conclusions of law contained in the court's earlier oral opinion.