**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1582-15T4

MIRIAM B. STENGER,

       Plaintiff-Respondent/
       Cross-Appellant,

v.

JAMES R. STENGER,

       Defendant-Appellant/
       Cross-Respondent.

_____

Argued March 16, 2017 – Decided September 19, 2017

Before Judges Espinosa and Guadagno.

On appeal from the Superior Court of New
Jersey, Chancery Division, Family Part,
Morris County, Docket No. FM-14-1206-04.

Jessica A. Bosch argued the cause for
appellant/cross-respondent (Dalena & Bosch,
LLC, attorneys; Ms. Bosch, on the briefs).

Jennie L. Osborne argued the cause for
respondent/cross-appellant (Einhorn, Harris,
Ascher, Barbarito & Frost, PC, attorneys;
Stephen P. Haller and Ms. Osborne, of
counsel and on the briefs).

PER CURIAM

Defendant James R. Stenger appeals from an order entered on June 30, 2015 denying his motion for termination or modification of his alimony obligation to plaintiff Miriam B. Stenger. Defendant also appeals from the November 20, 2015 order denying his motion for reconsideration. Plaintiff cross-appeals from the portion of the November 20, 2015 order denying her motion for counsel fees and costs.

The parties married in 1986, and divorced in 2005. Four children were born of the marriage, all of whom are now emancipated. During the marriage, defendant worked for plaintiff's father in his insurance business, F.A. Bonauto and Associates (FABA), in Morristown. Defendant's brother-in-law, Kenneth French, also worked at FABA. In 1986, defendant and French formed National Association Services, Inc. (NAS), providing wholesale and retail insurance services, including health insurance policies, to the general public.

Plaintiff filed a complaint for divorce in 2004 and retained a forensic accountant to examine defendant's income and the value of his interest in NAS. The parties engaged in discovery, including depositions, interrogatories, and document production.

In January 2005, after extensive negotiations, the parties entered into a property settlement agreement (PSA) which

2                                                          A-1582-15T4

resolved all outstanding issues. On March 31, 2005, a final judgment of divorce was entered incorporating the PSA.

Pursuant to the PSA, defendant was obligated to pay plaintiff permanent alimony of $162,000 per year which would terminate upon the death of either party or plaintiff's remarriage. Defendant was required to maintain a $1,000,000 life insurance policy, naming plaintiff as the beneficiary. Of significance to our discussion, the PSA provides:

> When the HUSBAND reaches age sixty-two (62), assuming the WIFE has not remarried or predeceased him, the parties shall negotiate an adjustment in the face amount of the insurance based on the cost of the premium, the HUSBAND's income, the WIFE's income at the time, if any, and actuarial considerations. If the parties cannot reach an agreement with respect to the amount of insurance coverage the HUSBAND is obligated to provide to the WIFE, either party may make application to the Superior Court of New Jersey, Chancery Division[.]

The PSA permitted defendant to retain his business interest in NAS "free and clear" of any interest of plaintiff. In consideration for this waiver by plaintiff, the agreement obligated defendant to pay plaintiff $800,000 with interest in quarterly installments. This amount was calculated pursuant to a business evaluation report, which estimated that NAS was worth approximately $1.8 million at the time of the divorce. This

3

payment term was to be evidenced by a promissory note secured by a pledge agreement of defendant's stock in NAS.

In March 2010, NAS was sold to BenefitMall Holdings, Inc. (BenefitMall) for $10.2 million. Defendant received $5.1 million for his fifty-percent share of the company. Defendant then made a lump sum payment of $800,000 to plaintiff pursuant to the PSA and placed the remaining proceeds of approximately $4.3 million in an investment account with Wells Fargo.

After the sale, defendant agreed to work for BenefitMall as the director of business development, earning $203,733 in 2010; $143,396 in 2011; and $73,485 in 2012. Then, at age sixty-one, defendant retired and relocated to Florida.

In 2013, plaintiff sold the former marital home in Morristown for $875,000 and purchased a smaller home in Morris Plains for $640,000. Plaintiff worked part-time at a retail store in Morristown, earning approximately $11,440 in 2013, and $15,826 in 2014.

In March 2015, defendant filed a motion to terminate or reduce his alimony and life insurance obligations based on the change of circumstance of his retirement. Defendant's case information statement indicated his net income for 2014 was $134,356, and his monthly expenses totaled $9062. Plaintiff

opposed the motion and sought to compel defendant to maintain the $1,000,000 life insurance policy.

On June 30, 2015, the motion judge entered an order accompanied by a written statement of reasons denying defendant's motion. The judge also denied plaintiff's cross-motion to maintain the insurance obligation and encouraged the parties "to discuss lowering the policy amount."

Defendant moved for reconsideration and sought discovery and a plenary hearing. That motion was denied on November 20, 2015.

On appeal, defendant argues the motion judge erred in failing to order discovery and a plenary hearing as he made a prima facie showing of changed circumstances, and the parties conflicting certifications demonstrated a clear dispute of fact. Defendant also claims he established that his earned income had been reduced from $700,000 per year to zero as a result of his retirement and he was unable to continue to pay alimony to plaintiff at a rate of $13,500 per month. Defendant also maintains that plaintiff no longer has an ongoing need for that amount of alimony, and the parties had contemplated his retirement at age sixty-two in the PSA. Finally, defendant claims the judge erred in determining that he has the ability to pay based on monies defendant received from the sale of NAS.

The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence. Gnall v. Gnall, 222 N.J. 414, 428 (2015). We do not disturb the "factual findings and legal conclusions of the trial judge unless . . . convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Cesare v. Cesare, 154 N.J. 394, 412 (1998) (quoting Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 484 (1974)). "Because of the family courts' special jurisdiction and expertise in family matters, [we] accord deference to family court factfinding." Id. at 413. However, our review of a trial court's legal conclusions is plenary. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

We review a decision on a motion for reconsideration under an abuse of discretion standard. Fusco v. Bd. of Educ. of Newark, 349 N.J. Super. 455, 462 (App. Div.), certif. denied, 174 N.J. 544 (2002). An abuse of discretion "arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cty. Prosecutor, 171 N.J.

561, 571 (2002) (quoting Achacoso-Sanchez v. Immigration & Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)).

"Motions for reconsideration are granted only under very narrow circumstances[.]" Fusco, supra, 349 N.J. Super. at 462.

> Reconsideration should be used only for those cases which fall into that narrow corridor in which either (1) the Court has expressed its decision based upon a palpably incorrect or irrational basis, or (2) it is obvious that the Court either did not consider, or failed to appreciate the significance of probative, competent evidence.
>
> [Ibid. (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)).]

Defendant argues that his retirement constitutes a changed circumstance as his earned income was reduced to zero. He also claims the previously referenced provision in the PSA mandating an adjustment in the amount of insurance coverage when he reached age sixty-two indicates the parties anticipated he would retire at that age.

The motion judge rejected this argument and held the provisions in the PSA relating to alimony and insurance coverage were "clearly separable," and defendant's argument to the contrary was "at best misplaced, and at worst grossly disingenuous."

A property settlement agreement is governed by basic contract principals. J.B. v. W.B., 215 N.J. 305, 326 (2013).

The language of the PSA is clear that the parties intended to reevaluate the life insurance policy when defendant reached the age of sixty-two because, at that age, the premium increases from $1463.75 to $27,968.15.  Based on this increase, it is apparent why defendant would have negotiated for this clause in the PSA.  Nowhere in the document is there an indication that defendant intended to retire or renegotiate alimony at this age.

The judge noted that defendant voluntarily sold his interest in NAS in 2010, and in the four years following the divorce, his average income substantially exceeded the income figure utilized in the PSA to calculate his alimony obligation. Of more significance is the judge's conclusion that defendant failed to provide sufficient documentation to allow him "to scrutinize the investment portfolio and determine the level of passive income being generated by the account."

Defendant's response to this finding is that the judge should have ordered a plenary hearing in order to obtain the needed information.  This cart-before-the-horse approach is fundamentally at odds with the settled principle that the party moving for modification bears the burden of making a prima facie showing of changed circumstances. Lepis v. Lepis, 83 N.J. 139, 157-59 (1980).  This showing must be made before a court considers whether to order a plenary hearing. Id. at 159.  The

judge's finding that defendant failed to provide sufficient documentation finds ample support in the record and we see no reason to disturb it.

Finally, defendant claims the motion judge erred in considering proceeds from the sale of his business when weighing defendant's ability to pay his alimony obligation, and should have limited his inquiry to defendant's "current income" and excluded any income flowing from the sale of his business. We disagree.

"Although some assets may be exempt from those subject to equitable distribution (such as an inheritance), income derived from those excludable assets may be considered in the initial alimony decision or modification of an alimony award." Miller v. Miller, 160 N.J. 408, 422 (1999). There is no indication in the PSA that the parties intended to exclude the proceeds or income generated from the proceeds of the sale of defendant's business. Even if the parties had exempted the proceeds, "the income generated by [an exempted asset] is no different from income generated by any other asset, exempt or otherwise, for an alimony analysis." Aronson v. Aronson, 245 N.J. Super. 354, 363 (App. Div. 1991).

The remaining arguments presented by defendant lack sufficient merit to warrant further discussion in our opinion,

as does plaintiff's claim that the judge erred in denying her request for counsel fees and costs. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1582-15T4