**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4716-16T1

BARRY J. WEINBAUM,

     Plaintiff-Appellant,

v.

BARBARA T. WEINBAUM,

     Defendant-Respondent.

_____

Argued January 31, 2019 – Decided July 19, 2019

Before Judges Simonelli, O'Connor and DeAlmeida.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FM-12-0682-09.

Rajeh A. Saadeh argued the cause for appellant (The Law Office of Rajeh A. Saadeh, LLC, attorneys; Rajeh A. Saadeh, on the briefs).

Sarah Melissa Mahony argued the cause for respondent (Shimalla, Wechsler, Lepp & D'Onofrio, LLP, attorneys; Sarah Melissa Mahony, of counsel and on the brief; William Edward Reutelhuber, on the brief).

PER CURIAM

Plaintiff Barry J. Weinbaum appeals from a provision in the June 27, 2017 Family Part order denying his request to reduce or terminate the alimony he is obligated to pay defendant Barbara T. Weinbaum, as well as from a provision denying his request for counsel fees. After reviewing the record and applicable legal principles, we affirm in part and remand for further proceedings.

I

The parties were married in 1984 and divorced in 2009. [1] The parties entered into a property settlement agreement (PSA), which was incorporated in an amended dual final judgment of divorce. Among other things, the PSA provides that plaintiff is to pay defendant $6000 per month in permanent alimony, which is premised upon him earning $250,000 and defendant $40,000 per year. Paragraph seven of the PSA states that alimony "may be subject to review" under four circumstances. The circumstance relevant to the issues on appeal is the "involuntary and non-temporary loss of employment by the [h]usband."

When the parties were divorced in 2009, plaintiff was in fact earning $250,000 per year and continued to do so until March 2013, when Lumenergi, Inc., a venture capital company he worked for in California, was shut down.

---

[1] Two children were born of the marriage. Both are now emancipated.

A-4716-16T1

Plaintiff was the president and CEO of this company and, when it was shut down, plaintiff moved from California to Maryland.

Over the next three years, plaintiff provided some consulting services to certain entities, but the services he provided yielded either no income or no income of significance. Plaintiff testified that, rather than seek a position as a W-2 wage earner, in November 2016, he decided to sell insurance as an independent contractor for the New York Life Insurance Company. He is compensated solely by the commissions he earns.

In 2015, plaintiff filed a motion to suspend, reduce, or terminate his obligation to pay alimony. He claimed he diligently searched for but was unable to find a position that paid or even approached $250,000 per year. After considering defendant's response, the court determined there were material questions of fact in dispute and, after affording the parties an opportunity to engage in discovery, conducted a plenary hearing.

At the conclusion of the hearing, the trial court issued a written opinion setting forth its reasons for denying plaintiff's motion. We will not recite in detail all of the court's findings of fact and conclusions of law. Instead, because well supported by the competent evidence presented at trial, we incorporate by

3

reference the trial court's factual findings and recite only its key factual findings and legal conclusions.

First, the court found that plaintiff was not a credible witness. The court found his claim that, from 2013 to 2016, he diligently searched for a position that would enable him to meet his alimony obligations, but that no such position was available due to market or other conditions, unworthy of belief. The court determined plaintiff moved to Maryland from California in 2013 in order to care for his girlfriend's aging parents, an endeavor in which he primarily engaged until he started to sell insurance for the New York Life Insurance Company toward the end of 2016. The court noted:

> Plaintiff's testimony and evidence demonstrated that he failed to make any real effort to seek employment [from 2013 to 2016], let alone [make the] "robust and diligent efforts" . . . he claims. In fact, by [p]laintiff's own admission, since 2013, he had been attempting to secure employment . . . on only a "cursory or opportunistic" level. . . . Throughout [p]laintiff's testimony he revealed a complete lack of candor in his position before the [c]ourt and in his statements to [d]efendant's vocational expert.
>
> [Plaintiff's decision] to accept a significantly lower-paying job in an entirely new field, following the loss of his prior employment was not reasonable and appropriate under the circumstances of this case. . . . [T]here is objective evidence that [plaintiff] was deliberately underemployed and unreasonably avoided job opportunities at higher income levels.

4

The trial court denied plaintiff's motion to reduce or modify alimony because he failed to show there was a substantial, involuntary, and permanent change in his circumstances. In part, the court based its decision on the fact the PSA required plaintiff to show he had experienced an "involuntary and non-temporary loss of employment" if he wanted a modification in alimony.

Specifically, paragraph seven of the PSA states alimony may be subject to review if: (a) defendant cohabitates with another as defined by the case law; (b) plaintiff becomes disabled; (c) plaintiff experiences an "[i]nvoluntary and non-temporary loss of employment"; or (d) plaintiff retires in good faith as defined by "the then existing case law." The provision at issue is subsection (c). The court reasoned that because plaintiff failed to meet the condition in this subsection, it was obliged to enforce the terms of the PSA and deny plaintiff's motion.

However, apart and aside from deciding plaintiff was not entitled to relief pursuant to the terms of PSA, the court also found plaintiff was not entitled to relief pursuant to Lepis v. Lepis, 83 N.J. 139 (1980). In Lepis, our Supreme Court held a supporting spouse can seek to modify his alimony obligation upon a showing of changed circumstances that substantially affects such spouse's need or ability to provide support. See id. at 151-53. In addition, the change in

5

circumstance cannot be speculative or temporary.  Id. at 151.  Here, the trial court found plaintiff failed to meet the standards espoused in Lepis to warrant modifying his obligation to pay alimony.

Before the trial court, plaintiff argued the 2014 enactment of N.J.S.A. 2A:34-23(k), supported his application to modify or terminate alimony.  Although the court in fact considered some of the factors in N.J.S.A. 2A:34-23(k), which became effective on September 10, 2014, see L. 2014, c. 42, §1, the court ultimately concluded N.J.S.A. 2A:34-23(k) did not apply to this matter.

In addition to arguing he was entitled to a reduction in the amount of alimony he was obligated to pay because of his claimed inability to find a position that enabled him to afford paying defendant $6000 per month, plaintiff also argued there was a change in defendant's financial circumstances for the better since the parties were divorced.  Plaintiff introduced evidence that when defendant's mother died in June 2016, defendant acquired a total of $498,079.55, which defendant and her mother held in joint accounts with the right of survivorship.  In addition, defendant acquired her mother's former home.

According to defendant, the real property was worth approximately $355,000.  Plaintiff contended the real property was worth between $476,000 and $561,577, but even if the real property were worth only what defendant

claimed, the acquisition of the joint accounts and the real property enhanced defendant's ability to maintain the standard of living enjoyed during the marriage, warranting a reduction if not elimination of alimony.

Other than state defendant was credible, and that plaintiff's counsel's attempts to impeach defendant about the value of her mother's home "failed due to the significant proofs" provided by defendant about the condition of that home, the court did not address whether the amount of money in the joint accounts and the value of the real property, even as valued by defendant, warranted a modification of alimony.

Finally, the court rejected plaintiff's application for counsel fees, finding plaintiff did not show defendant had a superior ability to pay fees or that defendant had acted in bad faith.

II

On appeal, plaintiff asserts the following arguments for our consideration:

> POINT I: THE TRIAL COURT'S FACTUAL FINDINGS, AS WELL AS THE ILLOGICAL INFERENCES, DEDUCTIONS, AND CONCLUSIONS DRAWN THEREFROM, ARE MANIFESTLY UNSUPPORTED BY AND INCONSISTENT WITH THE TOTALITY OF THE SUBSTANTIAL, VOLUMINOUS, UNDISPUTED, AND LARGELY UNCHALLENGED EVIDENCE AND TESTIMONY ADDUCED AT TRIAL AND OFFENDS THE INTERESTS OF JUSTICE.

A-4716-16T1

POINT II:  THE TRIAL COURT MISAPPLIED AND FAILED TO APPLY APPROPRIATE LAW IN DENYING PLAINTIFF'S MOTION TO SUSPEND/REDUCE/TERMINATE/STAY ALIMONY.

POINT III:  PLAINTIFF SHOULD HAVE BEEN AWARDED ATTORNEY FEES.

"In our review of a Family Part judge's motion order, we defer to factual findings 'supported by adequate, substantial, credible evidence' in the record." Landers v. Landers, 444 N.J. Super. 315, 319 (App. Div. 2016) (quoting Gnall v. Gnall, 222 N.J. 414, 428 (2015)).  "Reversal is warranted when we conclude a mistake must have been made because the trial court's factual findings are 'manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice . . . .'" Ibid. (quoting Rova Farms Resort, Inc. v. Invr's Ins. Co. of Am., 65 N.J. 474, 484 (1974)).

We accord special deference to the expertise of the Family Part in its application of legal principles to family disputes.  Cesare v. Cesare, 154 N.J. 394, 412-13 (1998).  "However, when reviewing legal conclusions, our obligation is different; '[t]o the extent that the trial court's decision constitutes a legal determination, we review it de novo.'"  Landers, 444 N.J. Super. at 319

8

(alteration in original) (quoting D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013)).

In his first argument point, plaintiff contends the trial court's factual findings are unsupported by the evidence. We disagree. Although the trial court failed to make findings about whether the assets defendant acquired when her mother died affected the amount of alimony she receives, the trial court's factual findings are otherwise amply supported by the substantial credible evidence, and we discern no basis to disturb those findings. Apart from the court's lack of findings about defendant's change in circumstances after her mother's death, we conclude further discussion in a written opinion about the quality of the court's factual findings is unnecessary. R. 2:11-3(e)(1)(E).

Plaintiff next argues the trial court did not apply or misapplied the appropriate law when it considered his application to reduce or terminate alimony. He contends the court treated paragraph seven of the PSA as if it were an anti-Lepis clause and, thus, the court erroneously limited its consideration of whether plaintiff was entitled to a reduction in alimony on whether he suffered an involuntary and non-temporary loss of employment.

An anti-Lepis clause is a provision in a PSA in which the parties waive modification of alimony based on a change of circumstances. See Morris v.

Morris, 263 N.J. Super. 237, 240-43 (App. Div. 1993) (enforcing an "anti-Lepis provision" which expressly barred application of the Lepis standard to requests for modifications of alimony obligation). Here, the PSA does not include a provision barring a modification or termination of alimony based on a change of circumstances. Further, even if the trial court regarded paragraph seven of the PSA to be an anti-Lepis clause, clearly the court did not allow such clause to preclude it from applying Lepis – as plaintiff contends is appropriate – to determine whether plaintiff was entitled to the relief he requested based on a change of circumstances.

As stated, under Lepis, a change in circumstance warranting a modification of alimony includes increases or decreases in income or need. Lepis, 83 N.J. at 150-53. The change must substantially affect need or ability to provide support, and cannot be speculative or temporary. See id. at 151-53. Here, we have no quarrel with the trial court's findings that, pursuant to Lepis, plaintiff failed to show the requisite change in circumstances to justify a reduction or termination of alimony based upon his change in circumstances. Specifically, plaintiff failed to show that he was unable to find a job that enabled him to pay the alimony he agreed to provide to defendant in the PSA.

Although in 2013 plaintiff lost his position with Lumenergi, Inc., for which he was compensated $250,000 per year, there is insufficient evidence he could not find a position that would pay a comparable sum, and there is ample evidence he did not make a diligent effort to find such employment. Stated more simply, the trial court's essential finding, that if plaintiff tried he could have found a job that paid him approximately $250,000 per year, is well-supported by the evidence.

However, when before the trial court, plaintiff raised another issue on the question of changed circumstances, which it failed to address. Plaintiff contended the assets defendant received as a result of her mother's death bolstered her ability to contribute to her own support and, consequently, there should be a concomitant reduction in the amount of alimony he pays.

First, we note there is nothing about the assets defendant received as a result of her mother's death that insulates them from a Lepis motion. See Aronson v. Aronson, 245 N.J. Super. 354, 363 (App. Div. 1991) ("[T]here is nothing about plaintiff's inheritance income which entitles it to insulation from a Lepis motion."). Second, we have recognized the failure "to address [a supporting spouse's] claims of changed circumstances based on an enhancement in his former wife's income" is error warranting reversal of the denial of relief

11

and a remand for further proceedings.  <u>Stamberg v. Stamberg</u>, 302 N.J. Super. 35, 42 (App. Div. 1997); <u>see also</u> <u>Aronson</u>, 245 N.J. Super. at 364 (when support of "an economically dependent spouse is at issue," consideration must be given to "the ability of that spouse to contribute to . . . her needs").  Because the court did not address the impact the acquisition of the joint accounts and the real property had upon defendant's ability to support herself, we remand this matter so the trial court can provide to the parties, within sixty days, its findings of fact and conclusions of law on this issue.

The final argument plaintiff raises on the question of alimony is that the trial court erred when it failed to consider all of the factors in N.J.S.A. 2A:34-23(k) before denying his motion.  In our view, the statute does not apply and, therefore, it is immaterial the court failed to consider all of the factors.

N.J.S.A. 2A:34-23(k) applies to a "non-self-employed party."  Plaintiff was self-employed at the time of the plenary hearing and when the court rendered its decision. Plaintiff was working as an independent contractor selling insurance.  There is no evidence the few engagements he had as a consultant from 2013 to 2016 were as an employee.  Therefore, this statute does not apply to the facts of this case.

Second, although this statute states it became effective September 10, 2014, its application to provisions of pre-existing orders and agreements is guided by the bill adopting the alimony amendments, which adds a provision declaring the new law non-retroactive with respect to certain prior alimony agreements and judicial orders.  See Spangenberg v. Kolakowski, 442 N.J. Super. 529, 538 (App. Div. 2015).  The bill states:

> This act shall take effect immediately and shall not be construed either to modify the duration of alimony ordered or agreed upon or other specifically bargained for contractual provisions that have been incorporated into:
>
> > a. a final judgment of divorce or dissolution;
> >
> > b. a final order that has concluded post-judgment litigation; or
> >
> > c. any enforceable written agreement between the parties.
>
> [L. 2014, c. 42, § 2.]

"This additional statement signals the legislative recognition of the need to uphold prior agreements executed or final orders filed before adoption of the statutory amendments."  Spangenberg, 442 N.J. Super. at 538.  Here, the parties' PSA was incorporated into the amended dual final judgment of divorce in 2009 and the PSA contains specifically bargained for contractual provisions.

13

Finally, plaintiff contends the court erred when it denied him counsel fees. This argument is devoid of sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). We merely note that the court did not abuse its discretion because it did not enumerate every factor in Rule 5:3-5(c) when it made its decision on fees. See Reese v. Weis, 430 N.J. Super. 552, 586 (App. Div. 2013) (affirming the denial of attorney's fees where the trial court found that each party was capable of paying their own fees and that neither party had acted in bad faith, despite the court's failure to address every factor under Rule 5:3-5(c)).

Affirmed in part and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION