**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3896-23

LEA M. PRENDERGAST,

      Plaintiff-Respondent,

v.

SEAN PRENDERGAST,

      Defendant-Appellant.

_____

Submitted December 3, 2025 – Decided May 4, 2026

Before Judges Smith and Berdote Byrne.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Ocean County, Docket No. FM-15-0972-18.

Senoff & Enis, attorneys for appellant (Michael J. Gunteski, on the brief).

Lea M. Prendergast, self-represented respondent.

PER CURIAM

    Defendant Sean Prendergast appeals from an order denying his motion for

a downward modification of alimony and ordering him to pay $5,000 in counsel

fees to plaintiff Lea Prendergast. Plaintiff is a public-school teacher and defendant works in IT compliance for a pharmaceutical company. The parties were divorced in 2018 after entering into a Marital Settlement Agreement (MSA) wherein defendant agreed to pay $22,572 in alimony per year for twelve years. Defendant had argued for a downward modification because of plaintiff's increased income, which went from $65,297 at the time of the divorce to $95,489 for the 2024-2025 school year.

We vacate the order and remand to the trial court because it decided the modification motions without calculating the marital standard of living, which is an essential component of any modification analysis. The marital standard was not calculated at the time of the divorce, which required the court to calculate the marital standard before deciding the modification request.

Nevertheless, we affirm the award of fees. The court focused its analysis on defendant's failure to pay plaintiff "bonus alimony" pursuant to the MSA and concluded defendant had acted in bad faith. Defendant clearly violated this provision of the MSA, which was incorporated into the final judgment of divorce. Moreover, the MSA provides for the non-prevailing party to pay counsel fees if either party is required to litigate for failure to comply with the

2

agreement. There was no abuse of discretion in awarding counsel fees on this issue.

I.

The parties were married on October 2, 1999. They entered into an MSA on December 18, 2018. Pursuant to the MSA, defendant agreed to pay $22,572 in limited-durational alimony to plaintiff per year, or $868.15 biweekly. In addition, defendant agreed to pay "Bonus Alimony," which consists of "30% of his gross earnings in excess of $133,000, up to a maximum of $155,000." The alimony obligation ends after twelve years.

The MSA states the basis of the alimony award was defendant's $133,000 income, and, typically, a bonus of $14,420, and plaintiff's $65,297 income. Because the MSA was incorporated into a final judgment of divorce entered before the tax laws changed on December 31, 2018, the alimony is taxable income to plaintiff and tax-deductible to defendant. The parties also agreed to annually exchange W2s and 1099s. Both parties stipulated they would not be able to maintain the marital standard of living and agreed to retain their Case Information Statements (CIS) in lieu of a lifestyle analysis.

The MSA provided the parties would share joint legal custody of the children, with plaintiff as the parent of primary residence. The parties deviated

3

from the Child Support Guidelines and agreed defendant would pay $186 per week in child support. As of March 2024, the oldest child was twenty-one, and the youngest child was sixteen. Defendant's November 2017 CIS set forth the parties' marital lifestyle at $10,481.98 per month, including expenses associated with their children. A draft of plaintiff's April 2018 CIS lists the marital lifestyle as $8,857 per month, also including expenses related to their children.

At the time of the divorce in 2018, plaintiff's income, as stated in the MSA, was $65,297. In the 2020-2021 school year, she earned $76,189; in 2021-2022, $80,909; in 2022-2023, $85,514; in 2023-2024, $90,239; and in 2024-2025, $95,489.

Defendant's income when the parties were divorced was listed in the MSA as $133,000, with a bonus of $14,420. In 2020, he earned $147,470.43 in gross Medicare wages; in 2021, $282,104.86; in 2022, $146,253.10; and in 2023, $141,690.04.

After several post-judgment motions litigated between May 2020 and January 2024, defendant filed the motion currently before us in April 2024. Defendant sought, among other things, to have his alimony obligation reduced to $12,000 per year because of changed circumstances—specifically, plaintiff's increase in income since the divorce. Defendant filed a certification and

4

accompanying exhibits. Plaintiff opposed and filed a cross-motion, along with a certification and attached exhibits, seeking an increase of defendant's child support obligation and an order compelling defendant to pay her the bonus alimony owed pursuant to the MSA.

The trial court denied defendant's request to modify alimony based upon changed circumstances, and granted plaintiff's request for an order compelling defendant to pay $9,166.52 of owed bonus alimony. Additionally, the court granted plaintiff's request to modify defendant's child support obligation. The court also ordered defendant to pay plaintiff $5,000 in counsel fees and costs, finding defendant had acted in bad faith in not paying the bonus alimony provided for in the agreement. This appeal followed.

## II.

### A.

"Our review of Family Part orders is limited." Gormley v. Gormley, 462 N.J. Super. 433, 442 (App. Div. 2019). "We 'afford substantial deference to the Family Part's findings of fact because of that court's special expertise in family matters.'" Voynick v. Voynick, 481 N.J. Super. 207, 220-21 (App. Div. 2025) (quoting W.M. v. D.G., 467 N.J. Super. 216, 229 (App. Div. 2021)). Thus, a court's findings "are binding on appeal so long as [its] determinations are

'supported by adequate, substantial, credible evidence.'" Gormley, 462 N.J. Super. at 442 (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)).

We apply that same deference to a trial court's decision regarding a motion to modify a marital-support obligation. Cardali v. Cardali, 255 N.J. 85, 107 (2023); see also Larbig v. Larbig, 384 N.J. Super. 17, 21 (App. Div. 2006) ("Whether [a support] obligation should be modified . . . rests within a Family Part judge's sound discretion"). Thus, a trial court's decision regarding a support obligation should not be disturbed unless "the court made findings inconsistent with the evidence or unsupported by the record, or erred as a matter of law." Reese v. Weis, 430 N.J. Super. 552, 572 (App. Div. 2013). However, we "do not accord special deference to the Family Part's interpretation of the law." Satz v. Satz, 476 N.J. Super. 536, 549 (App. Div. 2023). We review questions of law de novo. Amzler v. Amzler, 463 N.J. Super. 187, 197 (App. Div. 2020).

B.

We begin our analysis with an overview of the law regarding alimony. "Alimony is an 'economic right that arises out of the marital relationship and provides the dependent spouse with a level of support and standard of living generally commensurate with the quality of economic life that existed during the marriage.'" Quinn v. Quinn, 225 N.J. 34, 48 (2016) (quoting Mani v. Mani,

6

183 N.J. 70, 80 (2005)) (internal quotation marks omitted). "Alimony is neither a punishment for the payor nor a reward for the payee. Nor should it constitute a windfall for any party." Aronson v. Aronson, 245 N.J. Super. 354, 364 (1991). It is a right relative to the parties' economic standards established during the marriage as far as their economic circumstances will allow post-divorce. Ibid.

"The award of [a]limony in New Jersey is primarily governed by statute." Voynick, 481 N.J. Super. at 224 (alteration in original) (quoting Landers v. Landers, 444 N.J. Super. 315, 320 (App. Div. 2016)) (internal quotation marks omitted). In 2014, our Legislature amended the alimony statute set forth at N.J.S.A. 2A:34-23. Specifically, the Legislature replaced "permanent alimony" with "open durational alimony," and limited the length of payments for couples married fewer than twenty years. N.J.S.A. 2A:34-23(b). Importantly, it also declared no one party has a greater right to the marital standard of living. N.J.S.A. 2A:34-23(b)(4).

Among the general considerations bearing on an economically dependent spouse's support is that spouse's ability to meet his or her financial needs, Lepis v. Lepis, 83 N.J. 139, 152 (1980), and to adequately save for his or her retirement. See Voynick, 481 N.J. Super. at 232. Therefore, any income a dependent spouse derives from employment or assets is crucial to the evaluation

A-3896-23

of economic need.  Aronson, 245 N.J. Super. at 364.  "This is true whether the spouse chooses to actually receive the income or whether, at his or her option," it is reinvested.  Ibid.  The issue is not actual receipt of funds but access to them. Id. at 364-65.

Because the intention of alimony is to assist the supported spouse in achieving an economic level enjoyed by the couple during the marriage, it is axiomatic the supported spouse is not entitled to an amount of alimony above which, when joined with his or her other income, would exceed the prior marital standard of living.  See Lombardi v. Lombardi, 447 N.J. Super. 26, 40-41 (App. Div. 2016).[1]  In many marriages, the parties recognize "the practical impact of the parties' need for separate residences and the attendant increase in living expenses on the ability of both parties to maintain a standard of living reasonably comparable to the standard of living established in the marriage."  N.J.S.A. 2A:34-23(c).  Two simply cannot live as inexpensively as one, primarily because of dual housing costs.  Where the marital standard of living cannot be achieved

---

[1]  In this regard, alimony differs from child support because children are entitled to share in the increases of income from their parents.  See Strahan, 402 N.J. Super. at 306 ("Children are entitled to not only bare necessities, but a supporting parent has the obligation to share with his children the benefit of his financial achievement." (quoting Isaacson v. Isaacson, 348 N.J. Super. 560, 580 (App. Div. 2002))).

A-3896-23

for both parties, the trial court must fashion an award that reaches equipoise to both parties below that standard, taking into account all of the factors set forth in the alimony statute. See S.W. v. G.M., 462 N.J. Super. 522, 531-32 (App. Div. 2020).

Of course, "[p]arties to a divorce action may enter into voluntary agreements governing the amount, terms, and duration of alimony, and such agreements are subject to judicial supervision and enforcement." Quinn, 225 N.J. at 48. A "trial court has the discretion to modify the agreement upon a showing of changed circumstances." Id. at 49 (quoting Berkowitz v. Berkowitz, 55 N.J. 564, 569 (1970)). When a party moves for a reduction in alimony, the court must first determine whether the moving party has made a prima facie showing of changed circumstances, R.K. v. F.K., 437 N.J. Super. 58, 62 (App. Div. 2014), which may include "an increase in the cost of living, an increase or decrease in the income of the supporting or supported spouse, cohabitation of the dependent spouse, illness or disability arising after the entry of the judgment, and changes in federal tax law." J.B. v. W.B., 215 N.J. 305, 327 (2013). The party seeking modification has the burden of proving a change in circumstances warranting relief from the support or maintenance obligations. Lepis, 83 N.J. at 157. A decrease of an alimony obligation "is called for when circumstances

9

render all or a portion of support received unnecessary for maintaining that standard." Id. at 153.

C.

With that framework in mind, we address defendant's appeal. The trial court found defendant did not establish a prima facie case of changed circumstances because plaintiff's "income increase has spanned a six-year period and falls below the cost-of-living; thus her increase in income does not meet the threshold of a significant change in circumstances." Moreover, the court determined "the increase in the dependent spouse's sole income is not a changed circumstance warranting modification."

Defendant argues plaintiff's increase in income makes part of the initial alimony award unnecessary, which therefore warrants downward modification. He also contends the court erred in deciding the modification motion without a plenary hearing. Plaintiff argues she "has relied on the agreed-upon support in planning her post-divorce financial stability, and a change would cause undue hardship."

The trial court erred in concluding plaintiff's increased income was not a changed circumstance warranting a modification without first considering the marital standard of living, which "is an essential component in the changed-

10

circumstances analysis when reviewing an application for modification of alimony." Crews v. Crews, 164 N.J. 11, 25 (2000). An increase in the dependent spouse's income may constitute a changed circumstance. See Quinn, 225 N.J. at 49 (citing J.B., 215 N.J. at 327); Stamberg v. Stamberg, 302 N.J. Super. 35, 42 (App. Div. 1997) ("A change in circumstances warranting modification of support may thus result from an alteration in the fortunes of either party."); N.J.S.A. 2A:34-23(k)(4), (7) (listing "[t]he income of the obligee" and "[a]ny changes in the respective financial circumstances of the parties" as factors to consider in modification inquiry).

Therefore, the question is whether an increase in income from $65,297 to $95,489, a 46% increase, constitutes a changed circumstance. The record indicates, and neither party disputes, defendant earned $1,002,984.86 in W2 Medicare wages from 2018-2023. Over the same period, plaintiff earned $437,321.48. When considering the entire period from 2018-2023, both parties improved their financial conditions, possibly in excess of the marital standard of living.

Where, as in this case, the marital standard was not previously established, the trial court is required to establish the standard when considering the modification motion. Glass v. Glass, 366 N.J. Super. 357, 371 (App. Div. 2004).

We have previously remanded cases for a determination of the marital standard when the trial court failed to make that finding.  See id. at 371-72; S.W., 462 N.J. Super. at 534; Murphy v. Murphy, 313 N.J. Super. 575, 581 (App. Div. 1998).  Indeed,

> the importance of establishing the standard of living experienced during the marriage cannot be overstated. It serves as the touchstone for the initial alimony award and for adjudicating later motions for modification of alimony award when "changed circumstances" are asserted.
>
> [Crews, 164 N.J. at 16.]

Moreover, defendant's CIS listed several expenses related to the children, and plaintiff's draft CIS did so as well.  The trial court, in determining the marital standard of living, must subtract those expenses wholly covered by the child support paid by defendant to plaintiff.  However, the Supreme Court in Crews cautioned that CISs are not the sole source of evidence used to establish the marital standard of living.  They only reflect a snapshot of the "current financial picture" and do "not necessarily provide information reflective of the standard of living enjoyed during the marriage."  Id. at 27.

We are constrained to remand this matter for a determination of the marital standard of living -- a numerical amount -- and an analysis of whether plaintiff's increase in income, when tax considerations are taken into account, represents a

changed circumstance warranting downward modification of defendant's alimony obligation. We make no substantive conclusions with respect to the outcome.

D.

Pursuant to Rule 1:10-3, it is within a trial court's discretion to award counsel fees to a party who moves to enforce a previously entered order or judgment. See Barr v. Barr, 418 N.J. Super. 18, 46-47 (App. Div. 2011). The same rule also applies to settlement agreements that have been incorporated into a final judgment. Haynoski v. Haynoski, 264 N.J. Super. 408, 413-14 (App. Div. 1993). "We will disturb a trial court's determination on counsel fees only on the 'rarest occasion,' and then only because of clear abuse of discretion." Barr, 418 N.J. Super. at 46 (quoting Strahan v. Strahan, 402 N.J. Super. 298, 317 (App. Div. 2008)).

Here, the trial court awarded $5,000 in counsel fees and costs to plaintiff pursuant to Rule 1:10-3, finding defendant acted in bad faith by not paying the bonus alimony owed to plaintiff pursuant to the MSA. The court noted, "[d]efendant has steadfastly refused to abide [by] the bonus alimony provision of the parties' agreement and [p]laintiff has incurred significant counsel fees and costs enforcing this provision." The MSA clearly provides defendant must pay

13

bonus alimony in the amount of "30% of his gross earnings in excess of $133,000, up to a maximum of $155,000." Defendant failed to pay bonus alimony, despite earning over $133,000 in 2022 and 2023. Additionally, the MSA provides another avenue for the recoupment of attorney's fees as it states, "[I]f either party sues the other as to any alleged breach of this Agreement, the prevailing party's counsel fees shall be paid by the losing party."

The court correctly concluded defendant had violated the MSA, incorporated into the final judgment of divorce, warranting counsel fees pursuant to both Rule 1:10-3 and the MSA. The award, which the court found to be "reasonable and commensurate with attorneys of [plaintiff's counsel's] experience and locale," was derived from the affidavit of services provided by plaintiff's counsel. Given defendant's uncontroverted breach of the MSA, it was not a "clear abuse of discretion" to order him to pay counsel fees. See Strahan, 402 N.J. Super. at 317.

Vacated in part, affirmed in part, and remanded for a calculation of the marital standard of living to determine whether changed circumstances warrant a modification of alimony. The court, in its sound discretion, may request additional briefing, documentation from the parties, or a plenary hearing, if necessary. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-3896-23