**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0180-23

MICHAEL J. BURKE,

     Plaintiff-Appellant/
     Cross-Respondent,

v.

TARA H. BURKE,

     Defendant-Respondent/
     Cross-Appellant.

_____

     Argued October 1, 2025 – Decided May 28, 2026

     Before Judges Berdote Byrne and Jablonski.

     On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Morris County, Docket No. FM-14-0361-20.

     John E. Clancy argued the cause for appellant/cross-respondent (Townsend Tomaio Newmark & Clancy, LLC, attorneys; John E. Clancy, on the briefs).

     Lizanne J. Ceconi argued the cause for respondent/cross-appellant (Javerbaum Wurgaft Hicks Kahn Wikstrom & Sinins, attorneys; Lizanne J. Ceconi and Elissa W. LeVine, on the briefs).

PER CURIAM

In these cross-appeals, plaintiff Michael J. Burke and defendant Tara H. Burke each appeal from the Judgment of Divorce (JOD) entered after trial and subsequent reconsideration motions. Prior to trial, the parties were able to amicably resolve many of their claims, including the majority of custody and parenting time issues, and the bulk of equitable distribution. The issues remaining for trial included the equitable distribution of one savings account (Capital One account), calculation of alimony, and calculation of child support, which was made difficult due to plaintiff's variable, commission-based earnings, which had risen sharply following the parties' separation. Following a multi-day trial at which only the parties testified, the court issued a JOD and comprehensive statement of reasons.

Plaintiff challenges numerous aspects of the court's orders, claiming the trial court erred in: 1) finding the proceeds of the Capital One account were inherited by defendant and exempt from equitable distribution; 2) setting alimony in the amount of $7,000 per month; 3) establishing child support in the amount of $2,200 per month; 4) failing to retroactively decrease his pendente lite support obligations; 5) awarding attorney's fees to defendant; and 6) ordering, post-litigation, defendant's buy-out obligation of plaintiff's interest in

2

A-0180-23

the marital home conditioned upon plaintiff's completion of six months of support payments. In her cross-appeal, defendant challenges the court's order denying: 1) support retroactive to the date of the parties' separation; and 2) the creation of a support trust funded by the buy-out of the marital home.

We largely affirm the trial court's orders but agree with plaintiff that there are two critical omissions in the court's otherwise detailed analysis. The court did not numerically quantify the marital standard of living and did not state the specific income it imputed to each party. Because of these omissions, we are constrained to remand this matter to the trial court to expand its findings by quantifying the marital standard of living, setting forth the income imputed to each party, and explaining its specific reasons for assigning alimony in the amount of $7,000 per month and child support in the amount of $2,200 per month.

I.

The parties were married on October 20, 2001. There are three children born of the marriage. Plaintiff left the marital home in March 2019. On October 2, 2019, plaintiff filed for divorce. On February 22, 2021, defendant moved for a pendente lite order to establish various support obligations. Plaintiff cross-moved for various relief, including establishment of a litigation trust. The trial

3

court entered an interim order requiring plaintiff to pay $6,320 twice a month ($151,680 per year in unallocated pendente lite support) but otherwise denied the bulk of the requested relief.

In June 2021, defendant moved to enforce litigant's rights for plaintiff's failure to maintain insurance. In August 2021, the court found plaintiff in violation of litigant's rights and awarded attorney's fees to defendant.

On July 7, 2022, plaintiff moved, relevant to this appeal, to reduce his pendente lite support obligation to $100,000 per year and to compel defendant to establish a litigation fund from the Capital One account, which plaintiff characterized as a joint, marital account. Defendant cross-moved for an order compelling plaintiff to comply with his support obligations and pay his arrearages. In November 2022, the court denied all motions except to order plaintiff to pay $18,900 in arrears.

The case was tried over five days in January 2023. On June 13, 2023, the court issued the JOD equitably distributing the parties' remaining property, setting alimony, child support, and related support obligations, and awarding limited attorney's fees to defendant.

Defendant filed a motion for reconsideration, requesting her obligation to buy out plaintiff's equitable share of the marital home be stayed until plaintiff

4

A-0180-23

had successfully made six months of support payments and satisfied any arrears. She also requested, upon completion of the buy-out, the funds owed to plaintiff not be disbursed to him but rather deposited into a trust to guarantee the satisfaction of his support obligation to the parties' children. Plaintiff cross-moved for assorted relief related to the marital assets, particularly the marital home, and his support obligations. After a hearing, the trial court granted defendant's request to condition the buy-out on six months of support payments but denied all other relief.

The parties both appealed the motions for reconsideration and the JOD. The trial court entered an order staying enforcement of alimony pending appeal.

II.

The facts are well known to these parties. We derive the salient facts from the voluminous record before us, including the trial transcript, and various pre- and post-trial submissions to the Family Part. Prior to their marriage, defendant worked as an accountant, and plaintiff sold financial products. The parties' first child, a college freshman at the time of the divorce, was born in June 2004. Their second child, a high school student at the time of trial, was born in June 2007. The parties' third child, a middle school student at the time of trial, was

born August 2009. When defendant's office closed and she was laid off in 2011, the parties agreed she would stay home full time to care for the children.

On January 28, 2014, defendant's mother died, leaving defendant as her only heir. Through a trust, she passed her estate to defendant expressly excluding plaintiff from any inheritance. The estate included stock, investment accounts, retirement instruments, and real property. After inheriting the estate, defendant sold her mother's home and deposited the proceeds—approximately $330,000—into the Capital One account.

In 2018, defendant returned to work. Defendant testified she had begun a teaching certification program as early as 1997 but never finished. In 2018, she accepted a position as a paraprofessional in a school, initially earning $20 per hour. During the 2019-2020 school year, she worked full time with a salary of $21,000. Also beginning in 2019, defendant worked toward her teaching certification and master's degree in special education, both of which she received in 2022. At the time of trial, she was working full time as a teacher with a salary of $63,181.

In the years surrounding their separation, plaintiff moved between several employers. In 2017, he sold mortgages for Eagle Home Mortgage, where his

6

combined salary and commission resulted in earnings of $530,556.[1]  Plaintiff moved to Mortgage Network in the same capacity, where he earned $497,193 in 2018 and $509,593 in 2019.  In early 2020, plaintiff moved to New Jersey Lenders, where he earned $655,286.  In 2021, while still at New Jersey Lenders, plaintiff earned $804,521.  In mid-2022, plaintiff left New Jersey Lenders for Draper and Kramer, another mortgage issuer, where he became a regional manager.  He was paid a salary of $100,000 per year, with the bulk of his remuneration coming in the form of commissions.  Although complete data for 2022 was not available at the time of trial, the parties stipulated plaintiff's total earned income through December 15 was $381,712.  Plaintiff explained the changes in his income were due to market conditions, most notably changes in interest rates.

On March 26, 2021, the court issued an order establishing plaintiff's pendente lite support obligations, including $12,640 in unallocated support payments twice a month, a sixty-percent share of the children's medical expenses, and the maintenance of several insurance policies.  Also in August 2021, plaintiff moved in with his girlfriend.  His case information statement (CIS) alleged he paid rent to her, as well as utilities, and paid for repairs and

---

[1]  The parties stipulated to these figures for the purpose of trial.

A-0180-23

improvements to her property. Around the same period, he purchased a WaveRunner, a boat, and furniture for a house she owned at the New Jersey shore.

In July 2022, plaintiff filed a motion to reduce his pendente lite obligation, arguing, among other things, the court's calculations were based on "unexpectedly good years" but the subsequent "hike in interest rates and the impending recession" had substantially lowered his income. The court denied the motion, explaining the support obligations had been based on a multi-year average of annual income of $500,000, the "marital status quo" to which plaintiff had stipulated for the purpose of the motion. That figure was lower than the "good years" in which plaintiff had earned $600,000-$800,000, allowing those excessive earnings to carry him through leaner years, and the anticipated downturn in the mortgage market was speculative. At the time, plaintiff had accumulated $18,900 in support arrears related to medical expenses, which the court had ordered him to pay.

Prior to trial in January 2023, the parties entered into several stipulations. Relevant to this appeal, the parties stipulated defendant had a previous career as an accountant that terminated in 2011, and her current salary as an educator was $63,181. The parties also stipulated that plaintiff's earnings were largely based

A-0180-23

on commission and varied from $497,193 in 2018, to $804,521 in 2021. Regarding assets, the parties agreed defendant would have the right to remain in the marital home with the children and buy out plaintiff's interest. They also agreed defendant would retain numerous inherited accounts and financial assets, worth approximately $624,910, and each party would retain their own retirement accounts and certain banking accounts. Only the Capital One account, and two additional accounts into which defendant had later transferred its contents, remained in dispute.

The trial proceeded over five days, with only the parties testifying. On June 13, 2023, the court issued an opinion and order and entered the JOD. The court explained, based on the "extensive testimony by each party and a detailed review" of the evidence, it did "not find [plaintiff] to be entirely credible." The court identified "a few of the numerous examples" of plaintiff's "lack of credibility and transparency," including—among other things—failure to advise the court of important financial information, purported unawareness of his own expenditures, and a tension between his claim that he could not afford to support his dependents while he simultaneously indulged in substantial recreational spending. The court found defendant more credible, based on her "calm demeanor," "attempts to answer questions directly," the detailed financial

9

records she supplied, and the consistency between her testimony and documentary evidence.

The court held the proceeds of the Capital One account were exempt from equitable distribution. It ordered plaintiff to pay $7,000 per month in alimony for a term of thirteen years, and pay $2,200 per month in child support, in addition to arrears which as of January 31, 2023 had grown to $19,073. The court denied both parties' request for retroactive adjustment of the pendente lite support, denied defendant's request for the establishment of a trust to serve the children's medical and educational needs, and gave defendant sixty days to complete the buy-out of the marital home. Finally, it awarded defense counsel fees in the amount of $44,000.

The parties both cross-moved for reconsideration and modification of certain parts of the JOD, primarily relating to the buy-out of the marital home. The court granted defendant's request to condition the buy-out upon completion of six months of timely support payments by plaintiff and ordered plaintiff to make all outstanding payments and reimbursements, including support arrears that had grown to $54,635 by August 2023, but allowed the amount to be deducted from the eventual buy-out proceeds. Otherwise, the court largely denied substantive relief.

10

III.

"Our review of Family Part orders is limited." Gormley v. Gormley, 462 N.J. Super. 433, 442 (App. Div. 2019). "We 'afford substantial deference to the Family Part's findings of fact because of that court's special expertise in family matters.'" Voynick v. Voynick, 481 N.J. Super. 207, 220-21 (App. Div. 2025) (quoting W.M. v. D.G., 467 N.J. Super. 216, 229 (App. Div. 2021)). Thus, a court's findings "are binding on appeal so long as [its] determinations are 'supported by adequate, substantial, credible evidence.'" Gormley, 462 N.J. Super. at 442 (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). A family court's legal determinations, however, are afforded no particular deference and are reviewed de novo. Amzler v. Amzler, 463 N.J. Super. 187, 197 (App. Div. 2020) (citing McGovern v. Rutgers, 211 N.J. 94, 108 (2012)).

IV.

A. Equitable Distribution of the Capital One Account Proceeds.

Regarding the equitable distribution of assets, N.J.S.A. 2A:34-23(h)(1) provides:

> [I]n all actions where a judgment of divorce . . . is entered the court may make such award or awards to the parties, in addition to alimony and maintenance, to effectuate an equitable distribution of the property, both real and personal, which was legally and

A-0180-23

beneficially acquired by them or either of them during the marriage or civil union.

In considering equitable distribution, the court must follow the three-step process first articulated in Rothman v. Rothman, 65 N.J. 219, 232 (1974):

> Assuming that some allocation is to be made, [the trial judge] must first decide what specific property of each spouse is eligible for distribution. Secondly, [the judge] must determine its value for purposes of such distribution. Thirdly, [the judge] must decide how much allocation can most equitably be made.

It is a rebuttable presumption that assets acquired during the marriage are subject to equitable distribution. It is the burden of the party asserting exemption to come forward with evidence to rebut that presumption. Painter v. Painter, 65 N.J. 196, 214 (1974); Landwehr v. Landwehr, 111 N.J. 491, 504 (1988); Orgler v. Orgler, 237 N.J. Super. 342, 351 (App. Div. 1989). Before the trial court undertakes to equitably distribute property, it "must first decide what specific property of each spouse is eligible for distribution." Rothman, 65 N.J. at 232.

Inheritances are not considered marital property and are generally excluded from equitable distribution. N.J.S.A. 2A:34-23; Scavone v. Scavone, 230 N.J. Super. 482 (Ch. Div. 1988), aff'd, 243 N.J. Super. 134 (App. Div. 1990). Crucially, the comingling of exempt funds is not, without more, enough

to establish an interspousal gift nor to render otherwise exempt property distributable. Dotsko v. Dosko, 244 N.J. Super. 668, 674 (App. Div. 1990); Wadlow v. Wadlow, 200 N.J. Super. 372, 380-81 (App. Div. 1985).

Additionally, it is evident from Rothman that a split of marital assets is not the presumptive starting point; each award varies depending on the circumstances specific to the case. N.J.S.A. 2A:34-23-1 sets forth the statutory factors consistent with Rothman and Painter. The philosophy underscored in the statute is based upon a partnership concept in which both parties contributed to the accumulation of marital assets, although rarely in equal measure. Tucker v. Tucker, 121 N.J. Super. 539, 545 (Ch. Div. 1972).

The disputed property in this case is comprised of the proceeds of the sale of defendant's mother's home, kept in the Capital One account. Defendant's mother passed away in January 2014. Through a trust, she willed her property to defendant and any "descendants who survive her," but expressly excluded plaintiff. Defendant testified that near the end of her life, her mother told plaintiff she did not want him to have any of her money. According to defendant, plaintiff told her: "Relax, I make plenty of money. I'm not taking your money."

A-0180-23

Defendant sold her childhood residence and deposited the proceeds of the sale into the Capital One account. A July 2014 account statement reflecting the deposit was addressed to defendant but listed plaintiff as a "joint name" on the account. Defendant testified, at the time, she did not believe the account was a joint account and the parties had never shared a joint savings account. The 1099 forms regarding the account were in her name alone and bore her social security number, and not plaintiff's.

Plaintiff testified that when defendant first opened the account many years before, defendant told him that she was opening a joint account. However, he acknowledged he did not participate in opening the account, had never made a withdrawal from the account prior to filing for divorce, and did not keep track of specific funds because he "didn't handle the money."

In June 2019, after plaintiff had moved out of the marital home but before he filed for divorce, defendant transferred $330,000 out of the Capital One account into two other accounts. When she did, she received a message from plaintiff asking if she was "moving $$$ around." According to defendant, this exchange alerted her "this was a joint account" for the first time, since she had opened and managed the account online and "online it did not show [plaintiff's] name."

14

A-0180-23

On April 27, 2020, plaintiff withdrew, for the first time, approximately $12,500 from the account without the consent of defendant, to satisfy his counsel fees and his share of a mediation retainer. At trial, plaintiff admitted the only legal bill he paid was approximately $10,000.

The trial court ruled the funds from the Capital One account would be retained by defendant and were not subject to equitable distribution. It found plaintiff not credible with respect to his testimony regarding the Capital One account. The court found plaintiff's stipulation, "the bulk" of defendant's inherited funds were exempt from distribution and his knowledge that his mother-in-law had wished to exclude him from any access to the funds, resolved the issue. The court highlighted plaintiff's acknowledgment he had never looked at the account prior to the $12,500 withdrawal and the purported reason for that withdrawal—paying legal fees—appeared contrary to the evidence, which further undermined his position.

On appeal, plaintiff asserts, regardless of whether some of the funds in the account came from defendant's inheritance, they were sufficiently comingled with marital funds to render them distributable. We agree with the trial court's finding that the account was created by defendant "separately with the stated intent to preserve these funds, inherited from her mother's estate, as separate

15

property" and defendant did not intend to allow the funds to become de facto marital assets.

We have previously disposed of the notion that extended intermingling of exempt funds and marital funds is enough to destroy the exemption. See Wadlow, 200 N.J. Super. at 380 ("Although these funds were commingled during the parties' cohabitation," so thoroughly that they "could not be traced," the court "perceive[d] a clearly manifested and unequivocal intent that they belonged to plaintiff and would ultimately be returned to her or her family.") Given the abundance of credible evidence in the record, we discern no reason to disturb the trial court's ruling.

B. Calculation of the Parties' Income.

The court discussed each party's finances, noting the plaintiff's stipulated income history and contrasting it with defendant's salary of $63,181 as a teacher. It observed plaintiff had conceded his average income in the two years prior to separation had been $500,000 and his income in the two years following the separation had been $655,286 and $804,521, although it had subsequently fallen to $381,712 in 2022. Plaintiff contended he should be imputed an income of $400,000 based on his anticipation of changes in mortgage rates that would decrease his earnings in the coming years; defendant argued he should be

imputed income at $510,000 annually.  The trial court did not expressly state in its order what income it imputed to plaintiff, however, previously, for the purpose of pendente lite support, the court had imputed an income of approximately $500,000 to plaintiff, based on his 2017-2019 earnings.

In cases of variable income, we have consistently approved of the practice of using an average income in calculating support obligations.  Gormley, 462 N.J. Super. at 446-47 (approving averaging where a commission-based job earned a party between $92,000 and $150,000 yearly).

Crucially, this average "must include the years after a complaint is filed and before a divorce is finalized" in addition to the years prior to the complaint. Gormley, 462 N.J. Super. at 447-48 (disapproving of an average that considered only income levels during the marriage).  This is so because, while a party's post-separation income is irrelevant to assessing the standard of living that existed during the marriage, it is indispensable in assessing the party's ability to maintain that standard, and to meet any support obligations.  Ibid.  Thus, while "averaging is normally done, in appropriate cases, over a three-year period," it has been extended over a longer period to include the years both before and after the divorce filing.  Platt v. Platt, 384 N.J. Super. 418, 426-27 (App. Div. 2006) (approving of a five-year average).  The "[i]mputation of income is a

A-0180-23

discretionary matter" that may turn on the court's "credibility findings" and is reviewed for abuse of discretion. Elrom v. Elrom, 439 N.J. Super. 424, 434 (App. Div. 2015).

From the 2017 through 2022 income evidence presented at trial, plaintiff earned $3,378,871, which, when averaged over the six-year period, resulted in an approximate annual income of $563,145. If the court took an average of the last three years, plaintiff earned an average of $613,839. Because the court did not set forth the specific imputation of income to plaintiff, we remand to the trial court for an explanation of the specific numerical imputation of plaintiff's income it used in calculating plaintiff's support obligations.

Plaintiff argues defendant should have been imputed an income higher than the $63,181 she earns as a teacher. He claims he presented evidence of approximately $20,000 in passive income and potential income from summer employment. As the court did not set forth the amount it attributed as income to defendant, we likewise remand to the trial court for an explanation of the specific numerical imputation of defendant's income it used in arriving at the support calculations.

A-0180-23

C. <u>Calculation of Alimony.</u>

We begin our analysis with an overview of the law regarding alimony. "Alimony is an 'economic right that arises out of the marital relationship and provides the dependent spouse with a level of support and standard of living generally commensurate with the quality of economic life that existed during the marriage.'" <u>Quinn v. Quinn</u>, 225 N.J. 34, 48 (2016) (quoting <u>Mani v. Mani</u>, 183 N.J. 70, 80 (2005)) (internal quotation marks omitted). "Alimony is neither a punishment for the payor nor a reward for the payee. Nor should it constitute a windfall for any party." <u>Aronson v. Aronson</u>, 245 N.J. Super. 354, 364 (1991). It is a right relative to the parties' economic standards established during the marriage as far as their economic circumstances will allow post-divorce. <u>Ibid.</u>

"The award of [a]limony in New Jersey is primarily governed by statute." <u>Voynick</u>, 481 N.J. Super. at 224 (alteration in original) (quoting <u>Landers v. Landers</u>, 444 N.J. Super. 315, 320 (App. Div. 2016)) (internal quotation). In 2014, our Legislature amended the alimony statute set forth at N.J.S.A. 2A:34-23. Specifically, the Legislature replaced "permanent alimony" with "open durational alimony," and limited the length of payments for couples married fewer than twenty years. N.J.S.A. 2A:34-23(b). Critically, it also declared no

19

one party has a greater right to the marital standard of living. N.J.S.A. 2A:34-23(b)(4).

Among the general considerations bearing on an economically dependent spouse's support is that spouse's ability to meet his or her financial needs, Lepis v. Lepis, 83 N.J. 139, 152 (1980), and to adequately save for his or her retirement. See Voynick, 481 N.J. Super. at 232. Therefore, any income a dependent spouse derives from active employment or passive assets is crucial to the evaluation of need. Aronson, 245 N.J. Super. at 364. "This is true whether the spouse chooses to actually receive the income or whether, at his or her option," it is reinvested. Ibid. The issue is not actual receipt of funds but access to them. Id. at 364-65.

Because the intention of alimony is to assist the supported spouse in achieving an economic level enjoyed by the couple during the marriage, it is axiomatic the supported spouse is not entitled to an amount of alimony above which, when joined with his or her other income, would exceed the prior marital standard of living, regardless of the supporting spouse's post-divorce economic success. See Lombardi v. Lombardi, 447 N.J. Super. 26, 40-41 (App. Div.

A-0180-23

2016).[2]   Likewise, if the supported spouse's post-divorce economic success renders him or her capable of meeting the marital standard of living without the supporting spouse's support, alimony is no longer warranted.

In many marriages, the parties recognize "the practical impact of the parties' need for separate residences and the attendant increase in living expenses on the ability of both parties to maintain a standard of living reasonably comparable to the standard of living established in the marriage."   N.J.S.A. 2A:34-23(c).   Where the marital standard of living cannot be achieved for both parties, the trial court must fashion an alimony award that reaches equipoise to both parties below that standard, taking into account all of the factors set forth in the alimony statute.   With this legal framework in mind, we address the parties' contentions on appeal.

Plaintiff argues the alimony award of $7,000 per month for a term of thirteen years must be vacated because the court failed to "numerically quantify the marital lifestyle" and erred in its analysis of each party's ability to replicate

---

[2] In this regard, alimony differs from child support because children are entitled to share in the increases of income from their parents.  See Strahan v. Strahan, 402 N.J. Super. 298, 306 (App. Div. 2008) ("Children are entitled to not only bare necessities, but a supporting parent has the obligation to share with his children the benefit of [their] financial achievement." (quoting Isaacson v. Isaacson, 348 N.J. Super. 560, 580 (App. Div. 2002))).

A-0180-23

that lifestyle. He contends this court should "remand for a quantification of the lifestyle, and for an ability to pay analysis."

N.J.S.A. 2A:34-23(b) provides that the court is required to consider:

(1) The actual need and ability of the parties to pay;

(2) The duration of the marriage or civil union;

(3) The age, physical and emotional health of the parties;

(4) The standard of living established in the marriage or civil union and the likelihood that each party can maintain a reasonably comparable standard of living, with neither party having a greater entitlement to that standard of living than the other;

(5) The earning capacities, educational levels, vocational skills, and employability of the parties;

(6) The length of absence from the job market of the party seeking maintenance;

(7) The parental responsibilities for the children;

(8) The time and expense necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment, the availability of the training and employment, and the opportunity for future acquisitions of capital assets and income;

(9) The history of the financial or non-financial contributions to the marriage or civil union by each party including contributions to the care and education

22

of the children and interruption of personal careers or educational opportunities;

(10) The equitable distribution of property ordered and any payouts on equitable distribution, directly or indirectly, out of current income, to the extent this consideration is reasonable, just and fair;

(11) The income available to either party through investment of any assets held by that party;

(12) The tax treatment and consequences to both parties of any alimony award, including the designation of all or a portion of the payment as a non-taxable payment;

(13) The nature, amount, and length of pendente lite support paid, if any; and

(14) Any other factors which the court may deem relevant.

[N.J.S.A. 2A:34-23(b).]

The court is required to "make specific findings on the evidence about all of the statutory factors" when evaluating an alimony request, even if certain factors are not applicable. N.J.S.A. 2A:34-23(c). In this case, the court reviewed all of the statutory factors, sometimes relying on earlier factual findings made during pre-trial motions, and mirroring conclusions reached in its prior discussion of equitable distribution.

At trial, defendant sought alimony in the amount of $9,500 per month for an indeterminate term, while plaintiff suggested $5,833 per month for eight

years. Both parties posited figures for the cost of the joint marital lifestyle. Defendant testified as to her CISs at length. She explained the sources of data she drew upon and her method of processing that data to derive total and average incremental expenditures. This included calculating expenditures for her post-separation lifestyle using present-day data and for the joint marital lifestyle using two years of pre-separation data. She concluded, prior to the separation, the family had spent an average of $5,230 on shelter (Schedule A expenses), $1,594 on transportation (Schedule B expenses), and $23,225 on personal expenses (Schedule C expenses). As a result, she quantified the cost of the joint marital lifestyle for the parties and their children at approximately $30,000 per month or $360,000 per year.

Plaintiff testified he had relied on the figures defendant had compiled for the joint marital lifestyle. Despite purportedly relying on the same figures as defendant, plaintiff quantified the joint marital lifestyle at approximately $10,000 per month. He calculated shelter expenses at $4,517, transportation at $1,395, and personal expenses at $5,355 for the family or $135,204 annually.

The court found the parties had "lived an upper-middle-class lifestyle, including annual vacations like two weeks at the shore, ski trips, and a trip to Disney." The court concluded defendant's figures were more trustworthy for

A-0180-23

several reasons, noting her greater familiarity with the parties' finances and support by documentary evidence. Although the court reviewed the evidence in great descriptive detail, it did not state the numerical value it was assigning to the parties' joint lifestyle. Moreover, the court does not appear to have wholly adopted defendant's figures, as the overall support awarded would leave a significant disparity between the parties' post-marital lifestyles. If the court had accepted defendant's quantification of the cost of the marital lifestyle, i.e., approximately $30,000 per month, it is unclear how it could have reached an alimony award of $7,000 per month and $2,200 in child support. The resultant award of $9,200 per month is below the $9,500 alimony award originally defendant proposed. Subtracting plaintiff's estimated personal share of expenses, child support payments ($2,200), defendant's anticipated monthly income ($6,900), and separately-ordered payments ($1,320)[3] would leave defendant with an estimated shortfall of approximately $15,200, more than double the $7,000 per month awarded. The difference between the numbers illustrates our difficulty in reviewing the ultimate alimony award in light of the

_____

[3] Life insurance ($220) and medical expenses ($1,100), pro-rated to plaintiff's share. College costs, not included in the original marital budget, are excluded.

court's omission to set forth the parties' respective incomes and a numerical value for the marital lifestyle.

The court found plaintiff's career and demonstrated earning potential would "certainly enable him to maintain a lifestyle reasonably comparable to that which he enjoyed during the marriage," but defendant "cannot sustain a lifestyle remotely comparable to the marital lifestyle on her salary even considering unearned income" from her equitable distribution. Aggregating these findings, the court concluded plaintiff's "salary, some of which will be paid to [defendant] through alimony, coupled with each party's share of equitable distribution will enable each party to live comfortably post-divorce, if they make reasonable and proper choices." The award reflects plaintiff will retain $373,760 in earned gross income if based on an average salary of $500,000, payment of alimony in the amount of $84,000, child support of $26,400, life insurance of $2,640, and medical expenses of approximately $13,200. Defendant will receive $193,000 in gross income from all sources: $63,000 for teaching, $84,000 in alimony, $20,000 in interest income from passive assets, and $26,400 in child support. The disparity between $373,760 and $193,000 was not sufficiently explained by the trial court nor is an

26

explanation given as to why plaintiff appears to receive a greater entitlement to the marital lifestyle than defendant.

A trial court in a contested matter is required to establish the marital standard of living. Glass v. Glass, 366 N.J. Super. 357, 371 (App. Div. 2004). We have emphasized a trial court "must make detailed findings of fact as to the essential elements of the parties' actual lifestyle, without reliance upon such vague and subjective terms as 'middle-class,' 'working-class,' or 'upper-class.'" Weishaus v. Weishaus, 360 N.J. Super. 281, 290-91 (App. Div. 2003), rev'd in part on other grounds, 180 N.J. 131 (2004). We have previously remanded cases for a determination of the marital standard when the trial court failed to make that finding. See Glass, 366 N.J. Super. at 371-72; S.W. v. G.M., 462 N.J. Super. 522, 534 (App. Div. 2020); Murphy v. Murphy, 313 N.J. Super. 575, 581 (App. Div. 1998). Indeed,

> the importance of establishing the standard of living experienced during the marriage cannot be overstated. It serves as the touchstone for the initial alimony award and for adjudicating later motions for modification of alimony award when "changed circumstances" are asserted.
>
> [Crews v. Crews, 164 N.J. 11, 16 (2000).]

The court, despite its detailed findings, did not sufficiently quantify the marital lifestyle. Its findings did not include a specific figure, or adopt either

27

party's proposed figure, or explain why it rejected their proposed marital lifestyle figures.

To be clear, the court is not required to adopt either party's figures. Likewise, there is no indication the court chose an indefensibly high quantification that improperly inflated the alimony award. The term of the limited durational alimony—thirteen years—was within the trial court's discretion, and we find no basis to disturb it on appeal. Nevertheless, without a numerical quantification of the marital lifestyle, we are unable to resolve the issue on appeal and are constrained to remand the matter for more specific findings as to each party's income and quantification of the marital lifestyle.

1. Retroactive Adjustment of Pendente Lite Support.

Plaintiff and defendant each take issue with the court's failure to retroactively modify its pendente lite support order. Plaintiff claims the pendente lite order should have been retroactively reduced to match the support award in the JOD and he should have received credit for the difference. In a collateral argument, plaintiff contends the thirteen-year alimony term was too lengthy given the parties' seventeen-year marriage and the approximately two years of pendente lite support. He asks us to reduce the length of the term or "credit" the two years of pendente lite support.

Defendant argues the pendente lite support order should have been made retroactive to the time between plaintiff's departure from the marital home in 2019 and the entry of the pendente lite order in 2021.

We are not persuaded by either party's arguments. The court is authorized to order preliminary pendente lite support in order to preserve the status quo while the litigation is ongoing. N.J.S.A. 2A:34-23; Mallamo v. Mallamo, 280 N.J. Super. 8, 11-12 (App. Div. 1995). Because such orders are, by nature, preliminary, the accompanying proceedings are truncated, generally comprising paper submission and oral argument without a plenary hearing. Id. at 12. The court is often presented with "conflicting" and "incomplete" information and thus cannot compile the accurate picture of the parties and their finances that will eventually emerge at trial. Id. at 16.

Given the unavoidably imprecise nature of the proceedings, pendente lite support orders are "subject to modification prior to entry of final judgment" or indeed "at the time of final judgment." Id. at 12. If, at the time of trial, the court determines that its pendente lite order was "'woefully inadequate' or 'obviously unjust,'" it should modify the order retroactively, in the interest of justice. Slutsky v. Slutsky, 451 N.J. Super. 332, 369 (App. Div. 2017) (quoting Jacobitti v. Jacobitti, 263 N.J. Super. 608, 617-18 (App. Div. 1993), aff'd, 135 N.J. 571

29

(1994)).  Thus, if a court finds that the supporting spouse paid too much or too little in pendente lite support, it may award a credit or adjustment—a "<u>Mallamo</u> credit"—in the amount of the overpayment or underpayment.  <u>J.E.V. v. K.V.</u>, 426 N.J. Super. 475, 491 (App. Div. 2012).

"Any changes in the initial orders rest with the trial judge's discretion" and are therefore reviewed pursuant to an abuse of discretion standard.  <u>Slutsky</u>, 451 N.J. Super. at 368.  A court misapplies its discretion "when a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis."  <u>D.M.C. v. K.H.G.</u>, 471 N.J. Super. 10, 27 (App. Div. 2022) (quoting <u>U.S. Bank Nat'l Ass'n v. Guillaume</u>, 209 N.J. 449, 467-68 (2012)) (internal quotation marks omitted).

On March 26, 2021, the court ordered plaintiff to pay $12,640 per month pendente lite in unallocated support.  The same order required plaintiff to maintain health insurance and assume sixty percent responsibility for medical expenses.  In the JOD, issued June 13, 2023, the court ordered plaintiff to pay alimony in the amount of $7,000 per month and child support in the amount of $2,200 per month, for an aggregate $9,200 per month.

Regarding plaintiff's request, the court explained that "[w]hile the alimony amount is lower than the pendente lite order provided, this was based on

30

considerations of equitable distribution and no credit will be due to" plaintiff. As to defendant's claim, the court explained it considered the alimony and equitable distribution awards and, in its role as "a court of equity," denied the request.

On appeal, plaintiff asserts the trial court based its pendente lite award on his post-separation income of approximately $800,000 and, although that award was reduced at the time of judgment, the reduction was not rendered retroactive "despite [p]laintiff's decrease in income." He professes confusion about "why the date that the trial court entered a [JOD] is the exact, equitable and appropriate date on which the" reduction should occur. Additionally, plaintiff accuses the court of being "hyper-focused" on his "enhanced spending post-complaint and during the time that the pendente[]lite order was in effect," arguing his spending was irrelevant.

Contrary to plaintiff's contention, the court was not "penalizing" him for "spending his income while the pendent[e][]lite support order was in effect." Rather, the court found spending freely on his own wants while consistently claiming to be unable to meet his support obligations rendered plaintiff less credible, as did professing to be unfamiliar with or unable to explain his own expenditures. While the final alimony and child support in the JOD are

approximately $2,000 lower per month than the pendente lite support, the court clearly explained the difference was due to the equitable distribution awards that went into simultaneous effect. We discern no reason to disturb the trial court's findings declining to grant a retroactive credit to plaintiff.

Defendant contends the voluntary support she received between the parties' separation in March 2019 and the entry of the pendente lite order in March 2021 was "woefully inadequate" and she should have received a retroactive credit commensurate with her actual need.

As previously noted, a court's ability to retroactively modify pendente lite support is a function of the preliminary, makeshift quality of such orders. See Mallamo, 280 N.J. Super. at 12. However, because the dependent party may have personal or tactical reasons for foregoing a motion, we may reasonably hold litigants responsible for the consequences of their decisions.

First, defendant offers no legal basis for her claim that the court should have awarded support for the months prior to the filing of divorce. N.J.S.A. 2A:34-23 authorizes the provision of support "[p]ending any matrimonial action." Before the complaint was filed no action was pending.

Defendant did not seek pendente lite support until sixteen months after the complaint was filed, on February 22, 2021. According to defendant, plaintiff

A-0180-23

had initially chosen to provide thirty-four percent of his net income in support during that time but eventually switched to providing a flat $3,740 twice a month. She testified it was this change that prompted her to file for pendente lite support.

Given defendant's testimony, she did not require pendente lite support any earlier because she was receiving support during this period, in amounts no less than $7,480 per month. While that sum may have fallen short of the amount eventually awarded, it is not low enough to be clearly "'woefully inadequate' or 'obviously unjust.'" Slutsky, 451 N.J. Super. at 369. Because defendant cannot show the court abused its discretion in denying credits to cover the period before defendant requested support, we find no error.

2. Calculation of Child Support.

A child's entitlement to their parents' support is "a fundamental interest," long recognized by our courts. Bowen v. Gilliard, 483 U.S. 587, 612-13 (1987) ("When parents make a commitment to meet [their parental] responsibilities, the child has a right to rely on the unique contribution of each parent to material and emotional support."); Burns v. Edwards, 367 N.J. Super. 29, 39 (App. Div. 2004) ("The principle of child support is engrained into our common law, statutory, and rule-based jurisprudence."). Moreover, children are entitled to enjoy the

benefits of either parent's post-divorce financial increase.  Strahan, 402 N.J. Super. at 306 (quoting Isaacson, 348 N.J. Super. at 580).  By extension, "children are entitled to have their needs accord with the current standard of living of both parents."  Isaacson, 348 N.J. Super. at 579.

Our court rules provide a set of guidelines, based on judicial policy combined with economic data, that "shall be applied" to all child support decisions, absent "good cause."  R. 5:6A; Child Support Guidelines, Pressler & Verniero, Current N.J. Court Rules, Appendix IX-A to R. 5:6A.  However, because the guidelines rely on the availability of reliable economic data, they are not applicable in "extreme parental income situations," i.e., where a would-be supporting parent's income falls below 150% of the national poverty line or above $187,200 per year.  Child Support Guidelines, Pressler & Verniero, Current N.J. Court Rules, Appendix IX-A to R. 5:6A, ¶ 20.  Therefore, when parents' combined income exceeds $187,200, "the court shall apply the guidelines up to $187,200 and supplement the guidelines-based award with a discretionary amount based on the remaining family income."  Ibid.; see also Isaacson, 348 N.J. Super. at 581 ("[T]he maximum amount provided for in the guidelines should be 'supplemented' by an additional award determined through application of the statutory factors set forth in N.J.S.A. 2A:34-23(a).").

In deciding how to exercise that discretion, the court is guided by statute: "the court in those cases not governed by court rule shall consider, but not be limited to," a series of specific factors. N.J.S.A. 2A:34-23(a). These factors illuminate the current and future needs of the child, juxtaposed with the current and expected means of the parents:

> (1) Needs of the child;
>
> (2) Standard of living and economic circumstances of each parent;
>
> (3) All sources of income and assets of each parent;
>
> (4) Earning ability of each parent, including educational background, training, employment skills, work experience, custodial responsibility for children including the cost of providing child care and the length of time and cost of each parent to obtain training or experience for appropriate employment;
>
> (5) Need and capacity of the child for education, including higher education;
>
> (6) Age and health of the child and each parent;
>
> (7) Income, assets and earning ability of the child;
>
> (8) Responsibility of the parents for the court-ordered support of others;
>
> (9) Reasonable debts and liabilities of each child and parent; and

A-0180-23

(10) Any other factors the court may deem relevant.

[Ibid.]

The controlling "goal is to calculate a child support award that is in the best interest of the child after giving due consideration to the statutory factors and the guidelines." Caplan v. Caplan, 182 N.J. 250, 272 (2005). So long as these factors are considered, it is within the trial court's discretion to determine "the choice of the methodology to employ in arriving at a child support award when the total income of the parties exceeds the guidelines." Ibid.

Child support awards are left to the sound judgment of the trial court and reversed only for a misapplication of that discretion. Foust v. Glaser, 340 N.J. Super. 312, 315-16 (App. Div. 2001) ("The trial court has substantial discretion in making a child support award. If consistent with the law, such an award will not be disturbed unless it is manifestly unreasonable, arbitrary, or clearly contrary to reason or to other evidence, or the result of whim or caprice." (citations omitted)).

Child support awards for children living at college away from home are subject to additional factors. See Jacoby v. Jacoby, 427 N.J. Super. 109, 113 (App. Div. 2012). Moreover, a parent's payment for college contribution and ability to contribute to same is subject to a different legal analysis. Id. at 121.

Plaintiff argues the trial court erred in failing to "sufficiently analyze the law" applicable to awarding child support in the parties' income bracket and otherwise erred in setting a support amount. We disagree as the record reflects the trial court made painstaking findings with respect to the child support award.

At trial, plaintiff proposed a support award of $1,400 per month while defendant sought $2,500 per month. In composing its order, the court completed a Child Support Guidelines (CSG) worksheet, but noted the guidelines were "not applicable" in light of the parties' high income and the worksheet was for "comparative purposes only." For the purpose of determining each party's "share" of combined income, the court attributed an income of $1,600 per week ($83,200 per year) to defendant and $9,615 per week ($499,980 per year) to plaintiff, or 41% and 69%, respectively, after relevant adjustment. However, for the Appendix IX-F "Basic Child Support Amount," the court could go no higher than $838 per week, the maximum amount for three children, subject to a 14.6% increase based on the children's ages. This yielded a support obligation of $240 per week (approximately $1,029 per month) for plaintiff, with the caveat that, because it was based on the CSG, it was only intended to cover the first $187,200 of the parties' combined income.

A-0180-23

In light of the parties' high income, the court moved on from the CSG and reviewed the nine specific factors outlined at N.J.S.A. 2A:34-23(a), remarking, among other things, that either party could meet the basic needs of the children following the divorce. The court noted plaintiff had an income of at least $380,000 the prior year, compared to defendant's $63,181, but only defendant had "save[d] the children's college expenses during the pendency of this litigation." Ultimately, the court ordered plaintiff to pay $2,200 per month in child support.

On appeal, plaintiff observes the court's CSG worksheet reflected an award of $1,040 per month whereas the court actually imposed an award of $2,200. He contends the court "did not make specific enough findings to warrant doubling the [CSG] award" and conducted a "superficial analysis as to the children's needs." Plaintiff notes the children have "no special needs," the eldest child is in college, plaintiff already purchased a car for the eldest child, and the court "still ordered [p]laintiff to pay 60% of expenses that are not typically included in a [CSG] award." He asserts "nothing in the trial court's analysis justifies such an extreme child support need" for his children, "above and beyond the Guidelines award."

A-0180-23

Plaintiff places great rhetorical focus on the difference between the award allowed by the CSG and the actual award. This emphasis is misplaced because the Guidelines do not apply in this case. By their very terms, the CSGs do not apply to families with combined incomes greater than $187,200, and thus no "good cause" is necessary to deviate from them in such cases. R. 5:6A; Child Support Guidelines, Pressler & Verniero, Current N.J. Court Rules, Appendix IX-A to R. 5:6A, ¶ 20. Indeed, even in 2022, plaintiff's lowest stipulated income year, plaintiff earned more than double the CSG maximum. Therefore, the implication that a support award that likewise doubled the CSG recommendation was somehow extreme or required special justification is unavailing. The court was not, as plaintiff suggests, required to find the children had any "special needs" in order to set a higher award amount. Indeed, we have cautioned a child's "need" may encompass luxuries in line with their parents' standards of living. Isaacson, 348 N.J. Super. at 566-69, 582-83. Thus, a court is required to analyze the statutory factors set forth at N.J.S.A. 2A:34-23(a) but calibrate its analysis to guarantee support commensurate with the parents' financial resources, not necessarily a child's basic needs or even the amount spent on the child during the marriage. Isaacson, 348 N.J. Super. at 581. So long as it

follows the applicable law, the trial court's decision is entitled to our deference. Foust, 340 N.J. Super. at 315-16.

In this case, the court reviewed each of the statutory factors. Most relevant, the court excluded college-related costs, noted the younger children engaged in "age-appropriate activities," and found no particularly extreme expenses. It also found all three children would likely attend college but already had savings accounts for that purpose.

Although the specific putative errors identified by plaintiff do not undermine the court's conclusion, and, to the contrary, reflect a correct application of law, we conclude the child support award suffers from the same infirmity as the alimony award: failure to state and explain the incomes attributed to both parties, rendering this court unable to review the child support award. Therefore, we remand to the trial court for more specific findings in support of its child support award.

3. Buy Out Conditioned on Plaintiff's Compliance with Alimony Obligation.

As previously noted, a Family Part judge is afforded "broad discretion . . . in allocating assets subject to equitable distribution." Slutsky, 451 N.J. Super. at 355 (omission in original) (quoting Clark v. Clark, 429 N.J. Super. 61,

71-72 (App. Div. 2012)). Specifically, the "manner of distribution" falls within the court's discretion. Steneken v. Steneken, 367 N.J. Super. 427, 435 (App. Div. 2004), aff'd in part, modified in part on other grounds, 183 N.J. 290 (2005). At its essence, the Family Part "is a court of equity, meaning a court of fairness." Kakstys v. Stevens, 442 N.J. Super. 501, 506 (App. Div. 2015). As such, it is vested with "inherent equitable authority to fashion appropriate remedies." Div. of Youth & Fam. Servs. v. M.W., 398 N.J. Super. 266, 295 (App. Div. 2008).

Plaintiff contends the court erred, post judgment, when it conditioned defendant's obligation to buy out plaintiff's share of the marital home on plaintiff's prior completion of six months of support payments. Plaintiff argues the trial court failed to specify its grounds for granting relief and claims "[n]o statute or case permits" conditioning distribution of marital equity on payment of support. He also reiterates his arguments that the court failed to consider his "reduction in income" or defendant's "massive equitable distribution award." We are not persuaded.

In this case, the delayed buy-out is wholly consistent with the court's equitable goals and powers. In the initial JOD, the court ordered defendant to buy out plaintiff's interest in the home—equal to approximately $293,000— within sixty days. On July 5, 2023, defendant filed a motion for reconsideration,

41

certifying "mortgage lenders have advised me that I must provide them with six full months of timely and complete alimony and child support payments from [p]laintiff" before she could secure the refinancing necessary to complete the buy-out. In support, defendant referred to plaintiff's own trial testimony, in which he, as a mortgage broker, testified one would need at least "four months after a divorce decree" to issue a mortgage, which would require records of consistent, completed support payments, not including pendente lite support records. In the same line of testimony, plaintiff had agreed to give defendant "a reasonable period of time" to buy out the interest.

Despite this acknowledgment, plaintiff, who had not complied with support obligations prior to trial and had not complied with those obligations following trial, accumulated approximately $55,000 in support arrears. By conditioning the buy-out of the marital home on plaintiff's compliance with support orders, the court avoided countenancing plaintiff's long-standing defiance of such orders. See N.J.S.A. 2A:34-23 (explaining the court's broad power to fashion remedies for non-payment of support). The court's order was consonant with its equitable powers and we see no reason to disturb it on appeal.

42

4.  Award of Counsel Fees.

Finally, plaintiff contends the award of $44,000 in counsel fees to defendant must be reversed because the court over-emphasized some considerations, underemphasized others, and failed to explain how it calculated the sum awarded.  Again, we are unpersuaded.

"We will disturb a trial court's determination on counsel fees only on the 'rarest occasion,' and then only because of clear abuse of discretion."  Barr v. Barr, 418 N.J. Super. 18, 46 (App. Div. 2011) (quoting Strahan, 402 N.J. Super. at 317).

The recovery of attorney's fees is specifically authorized in family actions. R. 4:42-9(a)(1); R. 5:3-5(c).  Pursuant to these rules, applicants must submit an affidavit of services addressing the factors listed in RPC 1.5(a) and itemize disbursements for which reimbursement is sought.  Prior to making such an award, the court "shall consider the factors set forth in the court rule on counsel fees, the financial circumstances of the parties, and the good or bad faith of either party."  N.J.S.A. 2A:34-23.  Thus, the court must analyze the following factors:

> (1)    the financial circumstances of the parties;
>
> (2)    the ability of the parties to pay their own fees or to contribute to the fees of the other party;

(3)    the reasonableness and good faith of the positions advanced by the parties both during and prior to trial;

(4)    the extent of the fees incurred by both parties;

(5)    any fees previously awarded;

(6)    the amount of fees previously paid to counsel by each party;

(7)    the results obtained;

(8)    the degree to which fees were incurred to enforce existing orders or to compel discovery; and

(9)    any other factor bearing on the fairness of an award.

[R. 5:3-5(c).]

In this case, both parties sought attorney's fees. By the trial's conclusion, defendant had "incurred fees and costs in the amount of $228,471.25 of which she [had] paid $162,986.66" and plaintiff had incurred approximately $143,507.

In making its fee award, the court reviewed all factors delineated by Rule 5:3-5(c) as well as RPC 1.5(a). Most saliently, the court found both parties had "the ability to pay their own counsel fees," particularly given the "assets received following equitable distribution," but "given the magnitude" of the fees accrued, neither could pay the others' without "significant depletion of their own assets." The court also found, based on both parties' anticipated income,

44

including alimony, plaintiff was better equipped to contribute to defendant's fees, but defendant had "exempt assets" on which to draw.

In discussing the parties' good or bad faith, the court declined to find that "either party advanced positions with respect for alimony or child support in bad faith." However, the court noted plaintiff had refused to pay support for a number of months and accrued support arrears of approximately $19,073. The court also recalled an incident earlier in the litigation when plaintiff told the court his base salary would be cut by twenty percent and, upon learning that would not occur, had failed to inform the court. Separately, the court observed defendant "had to subpoena certain information, which could have been obtained had [plaintiff] cooperated," including information related to the aforementioned salary cut, "distribution from an undisclosed marital retirement account," and an insurance policy plaintiff had improperly allowed to lapse.

The court held, with regard to the "significant trial issues" of alimony, child support and contribution, and the "exempt status of certain assets," defendant "materially prevailed." Having reviewed the parties' expenses through the lens of the applicable Court Rules, the court awarded defendant $44,000 in fees, approximately one quarter of her outstanding balance or one

fifth of her total fees. The court's careful analysis is supported by the record and we conclude it did not abuse its discretion.

 5. Defendant's Request to Create a Trust.

In her cross-appeal, defendant argues the court erred by declining to order the creation of a trust, funded by plaintiff's receipt from the buy-out of the marital home, to ensure the future support of the parties' children. Because there is no authority to suggest the creation of such a trust would be mandatory, we find no error on this point.

N.J.S.A. 2A:34-23 provides, following a divorce, a court "may" issue such orders for the "care, custody, education and maintenance of the children . . . as the circumstances of the parties and the nature of the case shall render fit, reasonable and just." The court may "require reasonable security for the due observance of such orders, including, but not limited to, the creation of trusts or other security devices, to assure payment of reasonably foreseeable medical and educational expenses." Ibid.

Trial courts have implemented trusts to secure parties' support obligations in a variety of circumstances. In Lynn v. Lynn, for example, a doctor's income decreased dramatically but temporarily when he returned to school, leading the trial court to order the creation of a trust to ensure the payment of child support

during that period. 165 N.J. Super. 328, 339 (App. Div. 1979). We approved the trial court's approach. Id. at 341-42; see also Finkel v. Finkel, 290 N.J. Super. 204, 206 (App. Div. 1996) (discussing the prior establishment of a support trust, funded by the sale of one party's interest in the marital home, when that party was in arrears). However, whether or not to establish a trust is within the discretion of the trial court. Savoie v. Savoie, 245 N.J. Super. 1, 6-7 (App. Div. 1990) (approving of the trial court's order that one party's proceeds from the sale of the marital home "be used as security for performance of the overall alimony and support package").

Plaintiff failed to observe his support obligations on more than one occasion, both by failing to make support payments and by failing to maintain court-ordered insurance. In response, defendant sought—both at trial and in her motion for reconsideration—to create a trust to guarantee the payment of plaintiff's obligations. In its initial order, the court denied her request, concluding "there are not liquid funds available for the creation of a trust and the parties will be ordered to maintain life insurance to ensure their respective obligations." It also noted there was no evidence of specific future medical needs of the parties' or their children and college funds had been created to support the children's education. In the context of plaintiff's request for a trust

to secure life insurance particularly, the court also denied the request but ordered plaintiff to "provide proof of payment and access to the insurance policy . . . on an ongoing basis." In its order on the parties' motions for reconsideration, the court again denied the request, although without prejudice.

On appeal, defendant highlights plaintiff's support arrears and failure to secure court-ordered insurance for the benefit of defendant and the parties' children. She also underscores plaintiff's reckless spending, failure to save, and reluctance to disclose necessary information to defendant and the court.

Defendant fails to establish the court erred in denying her request for the creation of a trust. The relevant portion of N.J.S.A. 2A:34-23 is permissive, providing the court "may" require the creation of a trust. See State v. S.N., 231 N.J. 497, 512 (2018) (explaining that "may" is generally "permissive," especially when contrasted with obviously mandatory language). Indeed, the very same paragraph of the statute provides that, in the alternative, "the performance of the said orders may be enforced by other ways according to the practice of the court." N.J.S.A. 2A:34-23; see also M.W., 398 N.J. Super. at 295 (explaining the Family Part's "inherent equitable authority to fashion appropriate remedies"). In this case, the court made use of numerous other means to enforce

its orders, including issuing subsequent orders, awarding attorney's fees, establishing payroll deductions, and requiring life insurance.

Because there is no authority to compel the specific remedy defendant seeks and because we conclude the court did not misapply its discretion, the court did not err in declining to establish a trust. In sum, we affirm the trial court's orders with the exception of the portion of the order establishing the alimony and child support obligations. We vacate those orders and remand to the court for more specific findings as to the income imputed to each party, and calculation of the marital lifestyle, utilizing the evidence adduced at trial.

Affirmed in part, vacated in part, and remanded for further proceedings in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-0180-23